BARBARA S. IPOCK, GUARDIAN AD LITEM FOR JUDITH I. HILL, AND TIMOTHY
    W. HILL, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR TIMOTHY JASON
    HILL, A MINOR v. SAMUEL J. GILMORE

No. 868SC848

(Filed 7 April 1987)

1. **Parent and Child § 1— loss of parental consortium—no action in N. C.**

    A claim for loss of parental consortium is not recognized in N. C., and it is
    not a denial of equal protection or due process to allow a spouse but not a
    child to recover for the loss of consortium of an injured person or to allow the
    child of a deceased parent but not the child of a brain-damaged parent to
    recover for such loss.

2. **Physicians, Surgeons and Allied Professions § 11— surgery more extensive
    than anticipated—no battery**

    The trial court did not err in entering a summary judgment order dismiss-
    ing plaintiffs' claims for battery based on defendant surgeon's expansion of a
    laparoscopy (band-aid surgery) into a total abdominal hysterectomy where the
    evidence showed that the surgery was expanded because of conditions
    discovered during the laparoscopy; a request for sterilization signed by the pa-
    tient and plaintiff husband authorized defendant to perform a laparoscopy and
    "to do any other procedure that his judgment may dictate during the above
    operation"; the patient signed an operation consent form which authorized ad-
    ditional procedures "if any conditions are revealed at the time of the operation
    that were not recognized before and which call for procedures in addition to
    those originally contemplated"; and the expanded surgery was thus not
    unauthorized.

3. **Physicians, Surgeons and Allied Professions § 21— malpractice—no punitive
    damages**

    The trial court in a medical malpractice action properly dismissed plain-
    tiffs' claims for punitive damages where there was no evidence of any ag-
    gravated facts which would support such claims.

    Judge PHILLIPS dissenting.

APPEAL by plaintiffs from *Llewellyn, Judge.* Judgment en-
tered 18 March 1986 in Superior Court, LENOIR County. Heard in
the Court of Appeals 6 January 1987.

On 18 February 1981, Judith Hill was admitted to Lenoir
Memorial Hospital for the purpose of undergoing a permanent
sterilization procedure called laparoscopy. Laparoscopy, often
referred to as "band-aid surgery," is a minor operation where
small incisions are made in the abdominal wall, a laparoscope is
inserted in the incision, and the fallopian tubes are sealed by clips

or an electric current. The patient generally is released from the hospital the same day.

Both Mrs. Hill and Mr. Hill signed a request for sterilization on 18 February 1981 which authorized Dr. Gilmore to perform the laparoscopy. Mrs. Hill also signed an operation consent form that same day.

On 19 February 1981, during the operation it was discovered that the patient's tubes and ovaries were completely bound down bilaterally by adhesions. Dr. Gilmore also discovered a cystic mass and chronic infection. Dr. Gilmore determined that it would be in the patient's best interest to perform a total abdominal hysterectomy. He left the operating room to consult with Mr. Hill. He then returned to the operating room and performed the hysterectomy.

Post-operatively, Mrs. Hill was noted to be confused. She was subsequently diagnosed as suffering from hypoxic brain damage (brain damage caused by a deprivation of oxygen to the brain) which occurred either during or immediately following the surgery performed by Dr. Gilmore.

On 11 January 1982, Mrs. Hill, through her guardian ad litem, Barbara Ipock, Timothy W. Hill, her husband, and Timothy Jason Hill, her son, through his guardian ad litem, instituted this action against Dr. Gilmore and several others, including an anesthesiologist, a nurse anesthetist and Lenoir Memorial Hospital, Inc., to recover damages for the injuries to Mrs. Hill and her family's loss of consortium.

Defendant Gilmore filed a motion for summary judgment on 5 April 1982. Plaintiffs filed a Rule 56(f) motion requesting an order allowing the late filing of the affidavit of their gynecological expert. The hearing was set for 1 November 1982.

On 17 November 1982, the trial court entered orders denying plaintiffs' Rule 56(f) motion and allowing Dr. Gilmore's motion for summary judgment. Plaintiffs excepted and the case proceeded against Lenoir Memorial Hospital, Inc. and the anesthesia defendants.

Prior to trial, the remaining defendants obtained summary judgment on the issue of Timothy Jason Hill's loss of parental

consortium. After the trial had begun, the anesthesiologist settled with the remaining plaintiffs, Mr. and Mrs. Hill.

At trial the jury returned a verdict in favor of the plaintiff Judith Hill for $600,000 and plaintiff Timothy W. Hill for $150,000 against Lenoir Memorial Hospital and the nurse anesthetist. In its judgment, the trial court reduced Mrs. Hill's award by $100,000, presumably to reflect the earlier settlement.

Plaintiffs appealed the trial court's order granting defendant Gilmore's motion for summary judgment. In an opinion reported in 73 N.C. App. 182, 326 S.E. 2d 271, *disc. rev. denied*, 314 N.C. 116, 332 S.E. 2d 481 (1985), this Court vacated the order granting Dr. Gilmore's motion for summary judgment and remanded the case for further proceedings.

On remand, plaintiffs filed a motion for leave to amend the complaint to allege claims against Dr. Gilmore for battery and for punitive damages. The motion was allowed.

In response to the amended complaint, Dr. Gilmore filed a motion for partial summary judgment, alleging that there was no genuine issue of material fact with respect to (1) the claim of the minor plaintiff, Timothy Jason Hill, for loss of parental consortium and (2) the claims of Barbara Ipock, guardian ad litem for Judith Hill, and of Timothy W. Hill, individually, for battery and punitive damages.

On 18 March 1986, the trial court allowed defendant Gilmore's motion for partial summary judgment and dismissed Timothy Jason Hill's claim for loss of parental consortium, and the claims for battery and punitive damages of Barbara Ipock, guardian ad litem for Judith Hill, and of Timothy W. Hill, individually. The order of partial summary judgment was later amended by the trial court to find that its ruling dismissing part of plaintiffs' claims affected a substantial right of plaintiffs and that there was no just cause for delay of an appeal from said rulings.

On appeal, defendant Gilmore cross-assigns as error the prior decision of the Court of Appeals in *Ipock v. Gilmore*, 73 N.C. App. 182, 326 S.E. 2d 271, *disc. rev. denied*, 314 N.C. 116, 332 S.E. 2d 481 (1985). From the judgments of the trial court, plaintiffs appeal.

*Kenneth B. Oettinger, Grover C. McCain, Jr. and Boyce, Mitchell, Burns & Smith, by Robert E. Smith, for plaintiff appellants.*

*Hornthal, Riley, Ellis & Maland, by L. P. Hornthal, Jr. and Robert B. Hobbs, Jr., for defendant appellee.*

ARNOLD, Judge.

[1] Plaintiffs first contend that the trial court committed reversible error in allowing Dr. Gilmore's motion for partial summary judgment, dismissing the claim of Timothy Jason Hill for loss of parental consortium. We disagree.

Recognition of the claim of loss of parental consortium has twice been refused by the courts of this state. *Henson v. Thomas*, 231 N.C. 173, 56 S.E. 2d 432 (1949); *Azzolino v. Dingfelder*, 71 N.C. App. 289, 322 S.E. 2d 567 (1984), *rev'd in part on other grounds*, 315 N.C. 103, 337 S.E. 2d 528 (1985), *cert. denied*, 107 S.Ct. 131 (1986). This asserted cause of action was not acknowledged at common law and it has no statutory sanction. *Henson* at 176, 56 S.E. 2d at 434. It is the duty of the judiciary to enforce the law as we find it and to determine if a cause of action is existent or non-existent as the law now exists, not to create new claims. *Id.*

We are aware of the dictum by way of footnote in the first appeal of this case which stated:

> We do note . . . that in other suits involving an indirect impact on children, our appellate courts have declined to recognize a cause of action for loss of parental consortium. *See Henson v. Thomas*, 231 N.C. 173, 56 S.E. 2d 432 (1949); *Azzolino v. Dingfelder*, 71 N.C. App. 289, 322 S.E. 2d 567 (1984). However, arguably in this case, the impact on the child is directly foreseeable.

*Ipock v. Gilmore*, 73 N.C. App. 182, 188, 326 S.E. 2d 271, 276, *disc. rev. denied*, 314 N.C. 116, 332 S.E. 2d 481 (1985).

While the loss of parental consortium in situations such as the present case may be quite real and worthy of compensation, recognition of a new cause of action is a policy decision which falls within the province of the legislature. "The 'excelsior cry for a better system' in order to keep step with the new conditions and spirit of a more progressive age must be made to the Legislature, rather than to the courts." *Henson* at 176, 56 S.E. 2d at 434.

Plaintiffs contend that it would be a denial of both equal protection and due process (1) to allow a spouse but not a child to recover for the loss of consortium of an injured person, or (2) to allow the child of a deceased parent but not the child of a brain-damaged parent to recover for such loss. We disagree.

First, the spousal relationship and the relationship between parent and child are not the same. Companionship, service, responsibility, love and affection between spouses differ in both degree and kind from those of a parent-child relationship. The law is not constitutionally required to treat these relationships as identical. *See Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 652 P. 2d 318 (1982).

Second, allowing the child of a deceased parent but not the child of a brain-damaged parent to recover for such loss does not deny equal protection or due process. The distinction is not between kinds of children but between a defendant's scope of liability for causing fatal as distinct from nonfatal injuries to the people who are the immediate victims of his or her negligence. *Id.*

Also, if the parent lives then the tangible aspects of a child's loss can be included in the compensation awarded in the parent's own cause of action. *Halberg v. Young*, 41 Hawaii 634, 59 A.L.R. 2d 445 (1957). With this in mind, a state legislature could rationally conclude that only upon the death of a parent should a child be compensated for intangible losses. *See Russell v. Salem Transp. Co.*, 61 N.J. 502, 295 A. 2d 862 (1972).

Plaintiffs argue that the middle tier test applicable in some equal protection cases should be used here. *See Dixon v. Peters*, 63 N.C. App. 592, 306 S.E. 2d 477 (1983). We disagree.

There is neither a semi-suspect class nor a semi-fundamental interest involved in the present situation. We find no basis to support plaintiffs' argument that the middle tier (substantial state interest) test should be used. Therefore, all that is needed is a rational basis for denying minor plaintiff's claim. *Id.* Several rationales are listed as follows.

First, there is the possible overlap in recovery of claims between the injured parent and the child. Second, there is the potential increase in insurance costs. There are also the derivative nature and indirectness of the injury; the uncertainty

and remoteness of damages; the multiplication of tort litigation; and the splitting of the basic cause of action. *See Garza v. Kanton*, 54 Cal. App. 3d 1025, 127 Cal. Rptr. 164 (1976); *see also Suter v. Leonard*, 45 Cal. App. 3d 744, 20 Cal. Rptr. 110 (1975).

We do not suggest that in situations such as the one presently before us, that a child's claim is not genuine. However, there must be a line drawn which ends a tort-feasor's liability at some point.

> While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.

*Toby v. Grossman*, 24 N.Y. 2d 609, 619, 301 N.Y.S. 2d 554, 561, 249 N.E. 2d 419, 424 (1969). It is the legislature's prerogative to extend such liability if they believe it proper, not ours.

This state does not recognize the claim of the minor plaintiff. The trial judge, therefore, properly granted partial summary judgment for defendant dismissing the claim for loss of parental consortium.

[2] Plaintiffs next contend that the trial court committed reversible error in allowing defendant's motion for summary judgment, dismissing the claims of Barbara S. Ipock, guardian ad litem for Judith Hill, and of Timothy W. Hill, individually, for battery, on the ground that there were genuine issues as to material facts and defendant was, therefore, not entitled to judgment as a matter of law. We disagree.

It has been established that only an unauthorized operation constitutes a battery. *See Nelson v. Patrick*, 58 N.C. App. 546, 293 S.E. 2d 829 (1982). In fact, the N. C. Supreme Court stated that:

> . . . where an internal operation is indicated, a surgeon may lawfully perform, and it is his duty to perform, such operation as good surgery demands, even when it means an extension of the operation further than was originally contemplated, and for so doing he is not to be held in damages as for an unauthorized operation.

*Kennedy v. Parrott*, 243 N.C. 355, 363, 90 S.E. 2d 754, 759 (1956).

The request for sterilization signed by both Judith and Timothy W. Hill authorized Dr. Gilmore to perform the laparoscopy and "to do any other procedure that his judgment may dictate during the above operation." The operation consent form which was signed by Mrs. Hill stated that, "[i]f any conditions are revealed at the time of the operation that were not recognized before and which call for procedures in addition to those originally contemplated, I authorize the performance of such procedures."

In light of the established case law above and the consent forms signed by Mrs. Hill, the trial court properly granted partial summary judgment dismissing plaintiffs' claims for battery because the evidence presented did not support such claims.

[3] Plaintiffs lastly contend that the trial court committed reversible error in allowing defendant's motion for summary judgment, dismissing the claims of Barbara Ipock, guardian ad litem for Judith Hill, and of Timothy W. Hill, individually, for punitive damages, on the grounds that there were genuine issues as to material facts and defendant was, therefore, not entitled to judgment as a matter of law. We disagree.

In order to qualify for punitive damages in North Carolina, some element of aggravation must be proven. *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976); *Paris v. Kreitz*, 75 N.C. App. 365, 331 S.E. 2d 234, *disc. rev. denied*, 315 N.C. 185, 337 S.E. 2d 858 (1985). In the context of an intentional tort, aggravated conduct ". . . usually consists of insult, indignity, malice, oppression, or bad motive in addition to the tort." *Paris* at 374, 331 S.E. 2d at 241.

The record does not indicate any evidence of aggravated facts sufficient to support a claim for punitive damages. The trial court did not err in granting partial summary judgment in favor of defendant on plaintiffs' claim for punitive damages.

Defendant makes cross-assignments of error contending that the Court of Appeals erred in its first opinion in this case. "Once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case." *N.C.N.B. v.*

*Virginia Carolina Builders*, 307 N.C. 563, 566, 299 S.E. 2d 629, 631, *reh'g denied*, 307 N.C. 703 (1983). Defendant's cross-assignments of error are without merit.

Affirmed.

Judge ORR concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

I dissent from all three holdings by the majority. First, in my opinion the claim of the child Timothy Jason Hill for the wrongful loss of his mother's care, guidance, society and training is well founded, and is not barred by either precedent or the inaction of the General Assembly. As to the notion that a claim for injury wrongfully done should not be considered by our courts unless such a claim either was approved by the courts of England before our republic was founded or has since been expressly authorized by the General Assembly, my views coincide with those expressed by Justice Seawell for himself and Justice Ervin in dissenting from the majority decision in *Henson v. Thomas*, 231 N.C. 173, 56 S.E. 2d 432 (1949). In that case the majority decision disallowed the claim of two children against an interloper who alienated their mother's affections and broke up their home. In Justice Seawell's soundly reasoned dissent, he showed in bold relief the shaky, insecure foundation of the leave it to the legislature doctrine of civil jurisprudence, the main effect and purpose of which is to grant immunity from liability to those who wrongfully injure and ruin others in a manner not previously litigated in our courts unless the claim has been explicitly authorized by the legislature. In doing so Justice Seawell made these compelling and unanswerable points: When we inherited the common law or received it by legislative adoption, we received neither a cadaver beset by *rigor mortis* nor a little short list of recognized rights and wrongs that our courts are limited to considering; what we received and is its genius was a living body of law whose principles can and should be applied to all our people, under all circumstances—a system whose guiding principle is that under the variant and changing circumstances of life each person has a duty

not to wrongfully harm others and is fully accountable for the consequences when he nevertheless does so; the system functions best and best serves the public when the courts apply this principle to all and sundry that come before them and make the adjustments that changing circumstances and the just adjudication of claims require, rather than leave such adjustments to the legislature, which has neither the time, the capacity, nor the inclination to make them; this is no radical doctrine, but is inherent in the law, and by their rulings our courts have been daily expanding and shrinking the elastic fabric of the common law from the beginning. Thus, we have not only the right, but the duty, in my opinion, to consider this child's claim and I vote to do so. Considering the claim would neither create a new cause of action nor impose any new duty on the defendant; though not asserted heretofore apparently, the cause of action has been available all along since no one has ever had the right to wrongfully injure others.

But the claim is entitled to consideration for another reason—for instead of being without legislative support this claim has both legislative and constitutional sanction. *Every person*, so Art. I, Sec. 18 of the Constitution of North Carolina says, "for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." This provision was adopted with a common law system in place and unless the provision is an utterly dead letter, as some of our court decisions would indicate, it certainly means that our courts have the authority and duty to hold wrongdoers accountable for tortiously injuring others whether the subordinate legislature has expressed its approval or not if it has not disapproved the claim, as is the case here. But the fact is the General Assembly has recognized the claim, at least impliedly, by enacting G.S. 28A-18-2(b)(4)b and c, which makes compensable the loss that children suffer when wrongfully deprived of their parents by death; and even under the narrowest view of the judicial function it would be no usurpation to apply that legislative policy to children whose loss of parental consortium is due to the parent being wrongfully brain damaged, rather than killed. These pertinent enactments by the people of the state and the General Assembly should weigh more heavily with our courts than the mere failure of the General Assembly to expressly approve a claim, the justness of which is

self-evident. Nor is the majority opinion in *Henson v. Thomas* any precedent against the enforcement of this child's claim; for as Justice Seawell correctly noted in his dissent that decision is bottomed completely on *non sequiturs*, the premise of which is that our law does not permit a child to recover from his *mother* for her wrongdoing — a problem certainly not present in this case and for that matter not present in that one either, since the Henson children did not sue their mother, but a stranger named Thomas. There being abundant evidence that due to the neglect, and perhaps even the folly, of the defendant this child suffered one of the most grievous injuries that any child can suffer — the loss of his mother's care, guidance, and love when most in need of it — the courts of this state have the clear duty, in my judgment, to consider his claim and not to deny him relief upon the spurious ground that we have no authority to do otherwise. We do have the authority — and law, justice and sound policy require that it be exercised.

Second, in my opinion the battery claim of Judith I. Hill and Timothy W. Hill was erroneously dismissed, because whether Dr. Gilmore was authorized to do the operation that he did is not a question of law that judges can decide, but is a question of fact that a jury must resolve. An authorization for medical treatment, when the intention of the parties is disputed with good reason as in this case, derives its meaning, as do other disputed authorizations and contracts, not merely from the words used, but from the circumstances that caused the writing to be executed in the first place. The context in which Mrs. Hill signed the authorization permitting Dr. Gilmore to invade her body was not that *her body* had to be rendered sterile *at all perils and costs* as Dr. Gilmore's conduct would seem to indicate. The evidence plainly shows that she and her husband merely wanted to avoid another pregnancy by some convenient and safe means, and it is a matter of common knowledge that a number of such means were available to them, some of which required only minor surgery on the wife or husband, and others of which required no surgery at all, but merely the use of a birth control device, of which there are several kinds. It was in that setting that Dr. Gilmore obtained Mrs. Hill's consent to do the band-aid procedure described and when he allegedly discovered that that simple little operation could not be completed as planned because of adhesions that did not jeopardize

her health or life, he had no reason for assuming that she had consented, or would consent if given the chance, to the removal of her fallopian tubes, ovaries and uterus. Common decency and sense, as well as professional duty, required him to recognize, it seems to me, that drastic major surgery at that time was not justified, whether she had technically consented to it or not; for he knew that notwithstanding the boiler plate language in the authorization form, that Mrs. Hill did not expect to awaken with her ovaries, fallopian tubes and uterus gone and that he had done nothing whatever to prepare her for such a traumatic eventuality, the necessity for which, when possible, is a matter of common knowledge. Under the circumstances, therefore, his plain duty in my opinion was to terminate the operation, discuss the remaining alternatives with her, and let her decide whether to give up her bodily organs or not. That instead of doing these things Dr. Gilmore proceeded to conduct an undiscussed, unauthorized, unprepared for major operation and to remove her reproductive organs is evidence aplenty in my opinion that a battery was committed. The sweeping authority that the Court gave to surgeons by *Kennedy v. Parrott*, 243 N.C. 355, 90 S.E. 2d 754 (1956) is not available to the defendant in this case; for *Kennedy* by its terms applies only to instances where the patient is operated on for some health threatening cause and during the operation the surgeon discovers another threat to the patient's health and good surgical practice requires that the operation authorized be extended and it is not feasible to obtain the patient's consent. None of which conditions existed in this case; for the evidence, viewed as we must view it, indicates that nothing was wrong with Mrs. Hill, the operation authorized was elective, and it was not necessary to extend it. Furthermore, even if it had been advisable or necessary to extend the operation the evidence indicates it did not have to be done then and could have been done just as well the next day after Mrs. Hill had given her consent and been prepared for its consequences.

The *Kennedy* opinion is relevant to this appeal, though, for in it Justice Barnhill, contrary to the view he expressed in *Henson v. Thomas* that only the legislature can modify the common law, declared with no encouragement whatever from the General Assembly that the rule of law theretofore in effect which limited surgeons only to operations that their patients had consented to

was outmoded and unsuitable to that modern day and surgeons could thereafter extend operations as the patient's health and good surgical practice required without being liable for exceeding their authority. If without legislative enactment our Courts have the power to extend or modify the law for the benefit of an alleged tort-feasor as was done in *Kennedy*, and has been done in many other cases as the reports show, it would seem to follow as a matter of course that they have the power to do the same thing upon behalf of wrongfully injured children.

Third, the claims for punitive damages were erroneously dismissed, in my opinion, because the evidence before the court, when viewed in its most favorable light for the plaintiffs, is sufficient to support the claim that defendant was either grossly negligent or acted with a reckless and wanton disregard for the bodily integrity and health of Mrs. Hill.