Annie Jean WILLIAMS as Guardian of Cynthia A. Thomas, Incompetent, and as Guardian of Cherionique Deanne Thomas and Charmaine DeAnne Thomas, Minor Children of Cynthia A. Thomas, Plaintiffs/Appellants,

v.

Carl HOOK, M.D.; Ear, Nose & Throat of Southern Oklahoma, Inc.; and Gary Paddack, M.D., Defendants/Appellees.

No. 69979.

Supreme Court of Oklahoma.

Dec. 26, 1990.

As Corrected Feb. 1, 1991.

As Corrected on Denial of Rehearing Feb. 11, 1991.

Monty L. Bratcher, Edmond, for plaintiffs/appellants.

Calvin W. Hendrickson, J. Roger Hurt, Oklahoma City, for defendants/appellees, Carl Hook, M.D., Ear, Nose & Throat of Southern Oklahoma, Inc. and Gary Paddack, M.D.

Austin Deaton, Ada, for appellee, Gary Paddack, M.D.

Kenneth R. Johnson, Lisa G. Lane, Ada, for appellee, Carl Hook, M.D., Ear, Nose & Throat of Southern Oklahoma, Inc.

Kauger, Justice:

The first impression issue presented is whether minor children or incapacitated dependent children may maintain a cause of action for the permanent loss of parental consortium [1] when a parent is negligently injured by a third party. We find that they may.

## ALLEGED FACTS

Cynthia A. Thomas (Thomas) first sought treatment from the defendant/appellee, Carl Hook, M.D. (Hook/doctor), on January 5, 1982, for relief of sinus drainage and infection. Hook performed a septoplasty on January 18, 1982, to clear Thomas' sinus passages, and Thomas recovered from the surgery without incident. Thomas consulted Hook again in 1985, and Hook prescribed medication for nasal congestion. When Thomas came to see Hook in July of 1986, complaining of sinus congestion and headaches, Hook's examination revealed that Thomas' nasal cavity was obstructed by polyps. Thomas was scheduled for a second surgery at Valley View Regional Hospital on August 12, 1986, and the next day, Hook performed surgery to clear Thomas' sinus and nasal cavities. When she arrived in the recovery room after the surgery, she was nonresponsive, could not follow commands, and could not control her bladder. Hook transferred Thomas to the Coronary Care Unit for continual cardiac monitoring, and consulted with an internist. The next morning, results of a CT scan indicated that Thomas' skull had been pierced during surgery, and that the brain was swollen. Thomas was taken by helicopter to Baptist Medical Center.

The second surgery left Thomas with some paralysis, memory loss, difficulty in communicating, and disorientation. She lacks bladder control, and must wear diapers. She is neither mentally nor physically capable of caring for herself. At the time of the operation, Thomas was twenty-one years old, unmarried, with two children—one five and one three. Since the surgery, Thomas has been unable to relate to her daughters, and she must have twenty-four hour supervision. Because her condition is permanent, Thomas' two daughters have been left without a mother's care or supervision.

---

1. Parental consortium is defined as the love, care, companionship, and guidance given by a parent to a child. *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190–91 (1984); Note, "The Child's Right to Sue for Loss of a Parent's Love, Care & Companionship Caused by Tortious Injury to the Parent," 56 B.U.L. Rev. 722–23 (1976). The development of consortium law is intertwined with that of the family. Comment, "The Child's Cause of Action for Loss of Consortium," 5 San Fern. V.L.Rev. 440–50 (1977). In early cases, the husband's right to recover was not limited to a loss of services, but included recovery for loss of services, society, and sexual intercourse. *Guevin v. Manchester St. Ry.*, 78 N.H. 289, 99 A. 298, 300 (1916). It is now recognized that sexual relations are but one aspect of the bundle of sticks that makes up a claim for consortium and that other elements —love, companionship, affection, society, comfort, services, and solace—are elements which should be considered when a child makes a claim for loss of consortium. *Sizemore v. Smock*, 430 Mich. 283, 422 N.W.2d 666, 669 (1988); *Hay v. Medical Center Hosp.*, 145 Vt. 533, 496 A.2d 939, 942 (1985).

On October 28, 1986, the plaintiff/appellant, Annie Jean Williams (Williams), acting on behalf of her daughter, Thomas, filed a medical malpractice action against Hook. Williams sought recovery for her daughter's medical expenses, lost earnings, pain and suffering, and for punitive damages. Acting in her capacity as guardian of Thomas' two minor children, Williams amended the petition on June 8, 1987, to include a cause of action for the children's loss of their mother's care, guidance, training, society, comfort, and companionship. The children's prayer for relief includes actual and punitive damages. On June 23, 1987, Hook moved to dismiss the children's claim for parental consortium for failure to state a claim upon which relief could be granted. The trial court sustained Hook's motion to dismiss on November 3, 1987. The Court of Appeals reversed the trial court holding that Oklahoma recognizes a cause of action for the permanent loss of parental consortium. We granted certiorari on February 21, 1990, to consider this first impression question.

## A MINOR CHILD MAY MAINTAIN A CAUSE OF ACTION FOR THE PERMANENT LOSS OF PARENTAL CONSORTIUM THROUGH ITS GUARDIAN AD LITEM OR NEXT FRIEND WHEN A PARENT IS NEGLIGENTLY INJURED BY A THIRD PARTY.

Hook argues that there is no foundation in Oklahoma law to support a cause of action for the loss of parental consortium. Williams counters asserting that support for recognition of a cause of action for loss of parental consortium is found in the Oklahoma Constitution, the Oklahoma statutes, and decisions of this Court.

Although a majority of courts which have considered the issue have refused to recognize a child's cause of action based on loss of parental consortium resulting from negligent injury to a parent,[2] the majority rule has been severely criticized by legal commentators,[3] and a substantial number

**2.** Twenty-seven jurisdictions refuse to recognize a cause of action for loss of parental consortium. *King v. Otasco, Inc.,* 861 F.2d 438, 443 (5th Cir.1988) (Applying California law.); *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471, 473 (D.C.Cir.1958); *Green v. A.B. Hagglund & Soner,* 634 F.Supp. 790, 796 (D.Idaho 1986) (Applying Idaho law.); *Wollam v. Kennecott Corp.,* 648 F.Supp. 160, 163 (D.Utah 1986) (Applying Utah law.); *Clark v. Romeo,* 561 F.Supp. 1209, 1211 (D.Conn.1983) (Applying Connecticut Law.); *Hoesing v. Sears, Roebuck & Co.,* 484 F.Supp. 478, 481 (D.Neb.1980) (Applying Nebraska law.); *Gaver v. Harrant,* 316 Md. 17, 557 A.2d 210, 218 (1989); *Vaughn v. Clarkson,* 324 N.C. 108, 376 S.E.2d 236, 238 (1989); *First Trust Co. v. Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 11 (N.D.1988); *Gray v. Suggs,* 292 Ark. 19, 728 S.W.2d 148 (1987); *Durepo v. Fishman,* 533 A.2d 264, 266 (Me.1987); *Shands Teaching Hosp. & Clinics, Inc. v. Smith,* 497 So.2d 644, 646 (Fla.1986); *Lee v. Colorado Dept.,* 718 P.2d 221, 234 (Colo.1986); *DeAngelis v. Lutheran Medical Center,* 58 N.Y.2d 1053, 462 N.Y. S.2d 626, 627, 449 N.E.2d 406–07 (1983); *Schmeck v. City of Shawnee,* 231 Kan. 588, 647 P.2d 1263, 1266–67 (1982); *Salin v. Kloempken,* 322 N.W.2d 736, 738 (Minn.1982); *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 652 P.2d 318, 331 (1982); *General Elec. Co. v. Bush,* 88 Nev. 360, 498 P.2d 366, 371 (1972); *Russell v. Salem Transp. Co.,* 61 N.J. 502, 295 A.2d 862, 864, 69 A.L.R.3d 522, 526 (1972); *Schroeder v. Ear, Nose & Throat Assoc.,* 383 Pa.Super. 440, 557 A.2d 21–22 (1989) review

denied 523 Pa. 650, 567 A.2d 653 (1989); *Barbera v. Brod–Dugan Co.,* 770 S.W.2d 318, 320 (Mo.Ct.App.1989); *Vaughn v. Reagan,* 784 S.W.2d 88, 92 (Tex.Ct.App.1989) application for writ of error granted; *Van De Veire v. Sears, Roebuck & Co.,* 127 Ill.Dec. 912, 913, 178 Ill. App.3d 794, 533 N.E.2d 994–95 (1989); *Still v. Baptist Hosp., Inc.,* 755 S.W.2d 807, 815 (Tenn. Ct.App.1988); *Sanders v. Mt. Sinai Hosp.,* 21 Ohio B.R. 292, 21 Ohio App.3d 249, 487 N.E.2d 588, 597 (1985); *Shattuck v. Gulliver,* 40 Conn. Supp. 95, 481 A.2d 1110, 1113 (1984); *W.J. Bremer Co., Inc. v. Graham,* 169 Ga.App. 115, 312 S.E.2d 806, 808 (1983), *cert. denied,* 252 Ga. 36, 312 S.E.2d 787 (1984); *Kelly v. United States Fidelity & Guar. Co.,* 353 So.2d 349, 351 (La.Ct. App.1977).

**3.** 1 Clark, "The Law of Domestic Relations in the United States," Ch. 12, § 12.6, p. 692 (2nd Ed. West 1987); Note, "Compensating the Child's Loss of Parental Love, Care & Affection," 1983 U.Ill.L.Rev. 293, 316 (1983); Note, "Torts—Loss of Consortium—Right of a Child to a Cause of Action for Loss of Society & Companionship When the Parent is Tortiously Injured," 28 Wayne L.Rev. 1877, 1887 (1982); Note, "Child's Right to Sue for Negligent Disruption of Parental Consortium," 22 Washburn L.J. 78, 101 (1982); Note, "Expanding Loss of Parental Society & Negligent Infliction of Emotional Distress—Allowing Recovery Despite Worker's Compensation Exclusive Remedy Provisions: *Ferriter v. Daniel O'Connell's Sons, Inc.,*" 13

of courts now recognize the claim.[4] The cause of action was first recognized in 1980 by the Supreme Judicial Court of Massachusetts in *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690, 696, 11 A.L.R.4th 518, 527 (1980). Since that time, the right to recover for the loss of a parents' love, care, companionship, and guidance has been recognized in ten jurisdictions.[5] Three courts which had previously denied recovery have now recognized a cause of action for loss of parental consortium.[6] These decisions seem to represent an emerging trend toward acknowledgment of the cause of action.[7]

Jurisdictions which have refused to recognize recovery have done so for a number of reasons—the fear of a multiplicity of actions, the difficulty of assessing damages, the fear of double recovery, and the burden which might be placed on society.[8] However, even these courts note that the child suffers a real and serious loss when a parent is injured,[9] and that because of the

U.Tol.L.Rev. 1401, 1435 (1982); R. Cooney & K. Conway, "The Child's Right to Parental Consortium," 14 J.Mar.L.Rev. 341, 351 (1981); Note, "Actions for Loss of Consortium in Washington: The Children are Still Crying," 56 Wash.L.Rev. 487, 492 (1981); Note, "Recovery for Loss of the Injured Parent's Society: *Ferriter v. Daniel O'Connel* (sic) *Sons, Inc.,*" III Det.C.L.Rev. 987, 1005 (1981); Note, "TORTS—Cause of Action for Loss of Parental Society Due to Negligent Act Recognized. *Ferriter v. Daniel O'Connell's Sons, Inc.,* [381] Mass. [507], 413 N.E.2d 690 (1980)," 12 Cum.L.Rev. 211, 225 (1981); Comment, "The Child's Cause of Action for Loss of Consortium," see note 1 at 467, supra; J. Love, "Tortious Interference with the Parent–Child Relationship: Loss of an Injured Person's Society & Companionship," 51 Ind.L.J. 590, 633 (1976); Note, "The Child's Claim for Loss of Consortium Damages: A Logical & Sympathetic Appeal," 13 San Diego L.Rev. 231, 251 (1975); Note, "The Child's Right to Sue for Loss of a Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent," see note 1 at 744, supra: W. Prosser, *Handbook of the Law of Torts,* p. 902, § 127 (4th Ed. West 1971). See also, W. Keeton, *Prosser & Keeton On The Law of Torts,* p. 929, § 124 (West.1984).

**4.** Ten jurisdictions recognize a cause of action for loss of parental consortium. *Commercial Union Ins. Co. v. Rivera,* 358 F.2d 480, 483 (1st Cir.1966) (Applying Puerto Rico law. Cause of action came within language of statute.); *Kelly v. T.L. James Co.,* 603 F.Supp. 390, 393 (W.D.La. 1985) (Applying general maritime law.); *Barbosa v. Hopper Feeds, Inc.,* 404 Mass. 610, 537 N.E.2d 99, 104 (1989); *Pierce v. Casas Adobes Baptist Church,* 162 Ariz. 269, 782 P.2d 1162, 1164 (1989); *Roquet v. Webb,* 436 N.W.2d 46–47 (Iowa 1989); *Sizemore v. Smock,* see note 1, supra; *Truesdell v. Halliburton Co.,* 754 P.2d 236–37 (Alaska 1988); *Bell v. County of Milwaukee,* 134 Wis.2d 25, 396 N.W.2d 328–29 (1986); *Hay v. Medical Center Hosp.,* see note 1, supra; *Ueland v. Reynolds Metals Co.,* see note 1, 691 P.2d at 194, supra; *Barton–Malow Co. v. Wilburn,* 547 N.E.2d 1123, 1126 (Ind.Ct.App.1989). See also, Annot., "Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent," 11 A.L.R.4th 549 (1982).

**5.** *Kelly v. T.L. James Co.,* see note 4, supra; *Barbosa v. Hopper Feeds, Inc.,* see note 4, supra; *Roquet v. Webb,* see note 4, supra; *Sizemore v. Smock,* see note 1, supra; *Truesdell v. Halliburton Co.,* see note 4, supra; *Bell v. County of Milwaukee,* see note 4, supra; *Hay v. Medical Center Hosp.,* see note 1, supra; *Ueland v. Reynolds Metals Co.,* see note 1, supra; *Barton–Malow Co., Inc. v. Wilburn,* see note 4, supra.

**6.** In *Villareal v. State Dept. of Transp.,* 160 Ariz. 474, 774 P.2d 213, 217 (1989), the Arizona Supreme Court expressly overruled *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723–24 (1954) holding that no cause of action existed for the loss of parental consortium. In *Ueland v. Reynolds Metals Co.,* see note 1, supra, the Washington Supreme Court recognized a cause of action for loss of parental consortium. The Washington Court of Appeals had earlier refused to recognize the cause of action in *Roth v. Bell,* 24 Wash.App. 92, 600 P.2d 602, 608 (1979). In *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424–25 (1981), the Michigan Supreme Court recognized a cause of action for parental consortium. The Michigan Court of Appeals had earlier refused to recognize the cause of action in *Hayrynen v. White Pine Copper Co.,* 9 Mich.App. 452, 157 N.W.2d 502, 504 (1968). The Washington and Michigan courts recognized the cause of action in the face of arguments that the decision to recognize recovery for loss of parental consortium should be left to the Legislature. *Roth v. Bell,* see this note, supra; *Hayrynen v. White Pine Copper Co.,* see this note, supra.

**7.** *Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 P.2d 991–92 (Alaska 1987).

**8.** *Salin v. Kloempken,* see note 2 at 739, supra; *Borer v. American Airlines, Inc.,* 138 Cal.Rptr. 302, 306, 19 Cal.3d 441, 563 P.2d 858, 862 (1977); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57, 59–60 (1962); *Ipock v. Gilmore,* 85 N.C.App. 70, 354 S.E.2d 315, 318 (1987).

**9.** *Lee v. Colorado Dept.,* see note 2 at 233, supra; *Borer v. American Airlines, Inc.,* see note 8 at 138 Cal.Rptr. at 310, 563 P.2d at 866; *Still v. Baptist Hosp., Inc.,* see note 2 at 812, supra.

erosion of the traditional concept of a child as a chattel,[10] lack of precedents may be a poor excuse to refuse to acknowledge the cause of action.

Duplicity of recovery is probably the most touted reason for denying recognition of the cause of action. However, it is also the most easily disposed of once the nature of the cause of action for the loss of parental consortium is understood. Pecuniary damages such as lost income which might be used for the benefit of a child or for the cost of substitute child care services are damages recoverable in the parent's action. The entire sum which would have been available as a resource for the parent to provide support and benefits to the child, be they essential or recreational, is recovered by the parent. A cause of action for loss of parental consortium is limited primarily to an award based on the emotional suffering of the child,[11] and recovery is limited to loss of the parent's society and companionship.[12] Allowing a child through its guardian ad litem or next friend to recover individually for injuries actually suffered need not create the feared imbalance. There is no need for the child to recover for economic disadvantages it might suffer due to the parent's injury. That item is recoverable by the parent.[13] A proper jury instruction that the child's damages are separate and distinct from the parent's injury will prevent double recovery on items considered in the parent's award.[14]

Courts which have accepted a cause of action for loss of parental consortium have found the concerns of double recovery and speculation on the appropriate amount of damages recoverable to be unfounded. These problems exist in other actions for the loss of consortium, in wrongful death actions, and in claims for emotional distress or for pain and suffering.[15] Support for allowing the cause of action is found in the increased recognition and awareness of children as persons with rights [16] rather

The most persuasive reason given for not acknowledging a cause of action for loss of parental consortium is that the change should be made legislatively. *Pleasant v. Washington Sand & Gravel Co.*, see note 2, supra; *Norwest v. Presbyterian Intercommunity Hosp.*, see note 2, 652 P.2d at 323, supra; *Durepo v. Fishman*, see note 2, supra.

10. *Steiner v. Bell Tel. Co.*, 358 Pa.Super. 505, 517 A.2d 1348, 1351 (1986), aff'd, 518 Pa. 57, 540 A.2d 266 (1988). Those courts recognizing the cause of action agree that lack of precedent is not a viable reason for failure to acknowledge a cause of action for the loss of parental consortium. *Berger v. Weber*, see note 6, supra.

11. *Hibpshman v. Prudhoe Bay Supply, Inc.*, see note 7 at 996, supra; Note, "The Child's Right to Sue for Loss of a Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent," see note 1 at 735, supra.

12. *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513, 522 (1984).

13. The issue of whether circumstances would ever justify recovery for economic loss for a child who suffers the permanent loss of parental consortium when a parent is negligently injured by a third party is not before us. Here, there was no prayer for recovery of economic loss. The loss alleged is "the loss of [the children's] mother's care, guidance, training, society, comfort and companionship."

14. *Villareal v. State*, see note 6, 774 P.2d at 218, supra; *Hibpshman v. Prudhoe Bay Supply, Inc.*, see note 7 at 996, supra. Recovery is not unlike the recovery allowed in *Gaither v. City of Tulsa*, 664 P.2d 1026, 1028 (Okla.1983), in which a mother was allowed to recover without joining a natural father in a wrongful death claim. In addition to pecuniary loss, the mother was found to have a personal right, independent of all others, to recover for the loss of companionship and love of the child; destruction of the parent-child relationship, and intangible personal injuries which accrued to her alone.

Here, the parties agreed to bifurcation of the parent's and children's claims. However, the courts can avoid multiple claims by requiring joinder of the minor's consortium claim with the injured parent's claim whenever possible. *Hibpshman v. Prudhoe Bay Supply, Inc.*, see note 7 at 997; *Ueland v. Reynolds*, see note 1, 691 P.2d at 194, supra.

15. *Kelly v. T.L. James Co.*, see note 4, supra; *Hibpshman v. Prudhoe Bay Supply, Inc.*, see note 7 at 995–96, supra; *Theama v. City of Kenosha*, see note 12, 344 N.W.2d at 519–22, supra. See also, 1 Clark, "The Law of Domestic Relations in the United States," note 3 at 690–91, supra.

16. *Villareal v. State*, see note 6, supra; *Theama v. City of Kenosha*, see note 12, 344 N.W.2d at 517. See also, *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975) (Recognizing due process right to notice and informal hearing in school disciplinary pro-

than as parental property.[17]

The reasons for recognizing a child's cause of action for loss of parental consortium outweigh any problems the action may present.[18] Although a monetary compensation will not allow a child to regain what was lost when the parent was injured,[19] it may aid in ensuring the child's continued normal and complete mental development into adulthood, and lessen the impact of the loss.[20] Another basis for acknowledging the right to recover is that society and the courts are becoming increasingly aware of children as persons with rights.[21] Because a child has to deal with the day-to-day realities of the disabilities of a severely injured parent, the child may suffer more intense and enduring mental anguish and suffering than would be the case if the parent died.[22] Children whose parents suffer extensive injuries, are deprived of any further parent-child exchange throughout the remainder of their childhood years, and lack an essential

role model.[23] Logic, justice, and public policy demand protection for a child's interest in the family relationship.

We have reviewed the arguments on both sides and find the arguments favoring the cause of action for loss of parental consortium more persuasive—we are hard pressed to find a distinction between allowing children to recover for the loss of consortium a child suffers through the actual death of a parent under 12 O.S.1981 § 1053[24] and refusing to allow recovery for the loss of consortium when for all practical purposes the parent is in a state which equates death. Here, two minor children have been deprived of the love, care, and companionship of their mother. Allowing a child to recover for the loss of parental consortium may aid in ensuring the child's normal and complete mental development.[25] The Legislature has provided that money damages may be awarded for the unlawful acts or omissions of third parties pursuant to 23 O.S.1981 § 3.[26]

cess.); *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56, 60 (1973) (Recognizing equal protection right of illegitimate children to maintain civil action for non-support against parent.); *A.E. v. State*, 743 P.2d 1041, 1049 (Okla.1987) (In which this court recognized the family's importance in the area of termination of parental rights by upholding the right to jury trial in a termination proceeding.).

**17.** *A.E. v. State*, id. at 1045, supra.

**18.** *Ueland v. Reynolds Metals Co.*, see note 1, 691 P.2d at 195, supra.

**19.** *Hoesing v. Sears, Roebuck & Co.*, see note 2 at 478–79; *Ueland v. Reynolds Metals Co.*, see note 1, 691 P.2d at 194, supra.

**20.** *Ueland v. Reynolds Metals Co.*, see note 1, 691 P.2d at 194, supra; Note, "The Child's Right to Sue for Loss of a Parent's Love, Care, & Companionship Caused by Tortious Injury to the Parent," see note 1 at 734, supra.

**21.** *Villareal v. State Dept. of Transp.*, see note 6, supra; *Theama v. City of Kenosha*, note 12, 344 N.W.2d at 517, supra. See also, *Goss v. Lopez*, note 16, supra; *Gomez v. Perez*, note 16, supra; *A.E. v. State*, note 16, supra.

**22.** *Commercial Union Ins. Co. v. Rivera*, 358 F.2d 480, 483 (1st Cir.1966).

**23.** *Theama v. City of Kenosha*, note 12, 344 N.W.2d at 515–16; R. Cooney & K. Conway,

"The Child's Right to Parental Consortium," see note 3 at 345, supra.

**24.** Title 12 O.S.1981 § 1053 provides in pertinent part:

"A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action, had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two (2) years.
B. The damages recoverable in actions for wrongful death as provided in this section shall include the following:
... The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.
... The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship...."

**25.** *Ueland v. Reynolds Metals Co.*, see note 1, supra; Note, "The Child's Right to Sue for Loss of a Parent's Love, Care & Companionship caused by Tortious Injury to the Parent," see note 1 at 734, supra.

**26.** Title 23 O.S.1981 § 3 provides:

"Any person who suffers detriment from the unlawful act or omission of another, may

Hook relies upon our pronouncement in *Clark v. Jones,* 658 P.2d 1147, 1149 (Okla. 1983) that, in a wrongful death action, loss of love, affection and companionship of an unemancipated deceased minor may not be considered as an element of legal damage to a decedent's sibling as support for the proposition that we should not recognize a cause of action for the loss of parental consortium. In *Clark,* unlike the situation before us today, we were bound by a legislative directive explicitly defining those parties entitled to recover for loss of consortium. Specific limitations were imposed by the Legislature. Title 12 O.S.1981 §§ 1053[27] and 1055[28] define those parties who may recover for the loss of consortium when death occurs—a surviving spouse, children and parents of a decedent, and a parent for the loss of a child. Here, there is no legislative or judicial prouncement on the right of children to recover for the permanent loss of their parent's companionship and society. In enacting § 1053, the Legislature has acknowledged that children have a legal entitlement to their parent's society.[29]

The Legislature's express adoption of parental consortium as an element of the damages recoverable under the wrongful death statute further convinces us that it is appropriate to recognize a cause of action for the loss of parental consortium.[30] The interest of children in a wholesome environment has a constitutional dimension no less compelling than that the parents have in the preservation of family integrity. In the hierachy of constitutionally protected values both interests rank as fundamental and must hence be shielded with equal vigor and solicitude.[31] When a parent dies in Oklahoma, it would be an anomoly indeed if a child were allowed recovery for the loss of a parent's society and companionship when the loss attends the parent's death, but denied recovery when the equivalent loss attends the parent's permanent injury.[32] This is especially true when a spouse may recover for the same injury in both a death and a non-death case.[33]

recover from the person in fault a compensation therefor in money, which is called damages."

**27.** Title 12 O.S.1981 § 1053, see note 24, supra.

**28.** Title 12 O.S.1981 § 1055 provides:
"In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just."

**29.** See, *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690, 695, 11 A.L.R. 4th 518, 527 (1980).

**30.** Title 12 O.S.1981 §§ 1053 see note 24, supra. Other courts recognizing the cause of action for loss of parental consortium also rely upon wrongful death statutes within their respective jurisdictions. *Hibpshman v. Prudhoe Bay Supply, Inc.,* see note 7 at 993, supra; *Hay v. Medical Center Hosp.,* see note 1, 496 A.2d at 941, supra; *Ferriter v. Daniel O'Connell's Sons, Inc.,* see note 29, 413 N.E.2d at 695, supra. Some courts assuming the majority position find wrongful death statutes unpersuasive as support

for recognition of the cause of action of parental consortium. *Durepo v. Fishman,* see note 2 at 265–66; *Zorzos v. Rosen,* 467 So.2d 305, 307 (Fla.1985).

**31.** *In re T.H.L.,* 636 P.2d 330, 334 (Okla.1981).

**32.** *Berger v. Weber,* see note 6, 303 N.W.2d at 426, supra.

**33.** *Kelly v. T.L. James Co.,* see note 4, supra. The right to recover for loss of consortium caused by death of a spouse is guaranteed in 12 O.S.1981 § 1053 see note 24, supra. A husband's right to recover for loss of consortium resulting in injury to his wife has long been recognized. *Aderhold v. Stewart,* 172 Okla. 77, 46 P.2d 346, 347–48 (1935). The same right is guaranteed to a wife by 32 O.S.1981 § 15 providing in pertinent part:
"Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, her own medical expenses, and by reason of loss of consortium, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone."

Like those courts which acknowledge the right of a child to recover for loss of a parent's love, care, companionship, and guidance if the parent is tortiously injured by a third party, we recognize that the common law is not static. It is a dynamic concept whose rules arise from the application of reason to the changing conditions of society,[34] and it is imbued with flexibility and capacity for growth and adaptation.[35] This Court has conceded the ability of the common law to evolve by recognizing other torts, not statutorily defined, by judicial adoption.[36] We find that a cause of action for the permanent loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person should be allowed to children under Oklahoma law.

## CONCLUSION

There is no justification for upholding the archaic barriers which prevent a minor child from being compensated for the unquestionable loss which occurs when he/she permanently loses the care, comfort, and companionship of a parent. Failure to recognize the cause of action when the relationship is protected on the death of a parent would be an affront to logic and justice.[37] Refusal to recognize the claim amounts to acknowledging an "immunity" for the tortfeasor—he/she may, with impunity, injure the child by depriving him/her of the love, society, care and protection of a parent.[38] We cannot sanction such a ludicrous result. In recognizing such a cause of action for the loss of parental consortium, we express no opinion as to the liability of the defendants/appellants. This cause was dismissed for failure to state a claim upon which relief could be granted. It is therefore reversed and remanded.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED.

HODGES, LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

HARGRAVE, C.J., OPALA, V.C.J., and SIMMS and SUMMERS, JJ., dissent.

OPALA, Vice Chief Justice, with whom HARGRAVE, Chief Justice and SUMMERS, Justice, join dissenting:

I would not expand the present parameters of actionable loss-of-consortium claims.

---

**34.** *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 303 (Okla.1986).

**35.** *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737, 740 (Okla.1980).

**36.** See, *McClelland v. Post No. 1201,* 770 P.2d 569, 572 (Okla.1989); *Centric Corp. v. Morrison–Knudsen Co.,* 731 P.2d 411, 415 (Okla.1986); *Brigance v. Velvet Dove Restaurant, Inc.,* see note 34 at 304, supra; *Williams v. Lee Way Motor Freight,* 688 P.2d 1294, 1296 (Okla.1984); *Vanderpool v. State,* 672 P.2d 1153, 1157 (Okla. 1983); *McCormack v. Oklahoma Publishing Co.,* see note 35, supra; *Munley v. ISC Fin. House, Inc.,* 584 P.2d 1336, 1340 (Okla.1978); *Christian*

*v. American Home Assurance,* 577 P.2d 899, 905 (Okla.1977). It is unnecessary that the cause of action for parental consortium be legislatively rather than judicially adopted in abrogation of the common law. See *McCormack v. Oklahoma Publishing Co.,* note 35, supra.

**37.** Note, "Recovery for Loss of the Injured Parent's Society: *Ferriter v. Daniel O'Connel* (sic) *Sons, Inc.,"* see note 3 at 1001, supra. See also, *Hibpshman v. Prudhoe Bay Supply, Inc.,* note 7 at 994, supra.

**38.** Comment, "The Child's Claim for Loss of Consortium Damages: A Logical & Sympathetic Appeal," see note 3 at 341, supra.