**Wendy SEGROVES, a minor, by and through her natural mother, Gayle Jean SEGROVES, Plaintiff,**

v.

**David HARTSON, M.D., Defendant.**

No. 91–C–182–C.

United States District Court, N.D. Oklahoma.

Oct. 18, 1991.

Matt A. Melone, Melone–Shepherd–Schroeder–Melone, Tulsa Okl., for plaintiff.

Joseph F. Glass, Marthanda Beckworth, Tulsa Okl., for defendant.

### ORDER

H. DALE COOK, Chief Judge.

Before the Court is the Report of the Magistrate Judge recommending certifying the issues raised in this case to the Oklahoma Supreme Court. After careful consideration of the pleadings, the Court concludes that the issues herein can be resolved in the following manner without certification.

On May 8, 1986 Gayle Jean Segroves had surgery for a hysterectomy at the Broken Arrow Medical Center. Defendant David Hartson, M.D. was the anesthesiologist. The surgery was performed under a general anesthesia. Complications resulted causing Gayle Segroves to be in a semi-comatose state within several days following the surgery. She was later diagnosed as having a subarachnoid hemorrhage. Gayle Segroves has sustained permanent left-sided paralysis resulting from damage to the brain. She has experienced partial loss of memory, impairment of communication skills as well as damage to her analytical and cognitive abilities. She is generally confined to a wheel chair.

At the time of the surgery Gayle Segroves had a ten-year-old daughter, Wendy. During the three years following the surgery Wendy stayed with friends of the family, was later placed with a foster family and still later in a children's home. Four years following the surgery, Wendy returned to live with her mother.

On May 6, 1988 Gayle Segroves filed a medical malpractice action in Tulsa County District Court against the defendant herein, David Hartson and others, alleging negligence. The minor child, Wendy, was not included as a party in the lawsuit nor were claims asserted on her behalf. Prior to trial, all other defendants except for Dr. Hartson and Dr. Harris settled their claims with Gayle Segroves. A jury returned a verdict in favor of Gayle Segroves and against Dr. Hartson and Dr. Harris in the amount of $2 million. Post trial Gayle Segroves settled the judgment with Dr. Hartson for $1 million. As part of the settlement, Gayle Segroves directed that a portion of the proceeds be paid through a structured annuity for the benefit of Wendy. The measuring lives for the annuity are those of Gayle and Wendy Segroves. By its terms, Wendy was granted installment payments annually of $15,000 for eight years, beginning August 10, 1993, and a lump sum payment of $46,540.75 payable on August 10, 1997.

In return Gayle Segroves executed a release of any claims she may have against Dr. Hartson and dismissed the state court action with prejudice. Wendy Segroves was not a named party to the lawsuit or to the settlement agreement, nor did Gayle Segroves execute the release in a representative capacity on behalf of her daughter Wendy.

Subsequent to Gayle Segroves' settlement and release with Dr. Hartson, the Oklahoma Supreme Court recognized a cause of action for loss of parental consor-

tium in *Williams v. Hook*, 804 P.2d 1131 (Okla.1990). Loss of parental consortium is a right of action by a minor child to recover for loss or interference with the love, care, companionship, guidance, services and society which is caused when a parent is negligently injured by a third party.

On March 22, 1991 Gayle Segroves filed the case *sub judice* as next friend of her minor daughter, Wendy, asserting a claim against defendant Dr. Hartson for loss of parental consortium. The defendant filed a motion to dismiss and a request for sanctions. Defendant asserts that this action is an abuse of process in that Wendy Segroves has been fully compensated by her mother's settlement with Dr. Hartson and that any additional relief would result in a double recovery by Wendy. Defendant also asserts that plaintiff's action is barred as being derivative of the prior action and by the applicable statute of limitations. Alternatively, defendant asserts that the *Williams* case has prospective application and therefore is unavailable to provide plaintiff additional relief.

*Retroactive Application*

█ Retroactive application is the traditional common law approach to implementation of decisions overruling prior case law. *Thompson v. Presbyterian Hospital, Inc.*, 652 P.2d 260 (Okla.1982). In examining the retrospective application of the *Williams* parental consortium rule, the Court must apply a three-factor test established by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). The factors considered are: (1) The holding must establish a new principle of law; (2) the merits and demerits of each case must be weighed by looking to the history of the rule in dispute, its purpose and effect, and whether retrospective operation will further or retard the rule's opera-

tion; and (3) retrospective application must create the risk of producing substantially inequitable results.

█ In considering these factors, the Court notes that the law on parental consortium has been in a state of flux among the various states in the union.[1] The rule established in *Williams* clearly announced a new and clear principle of law in Oklahoma. Accordingly, the first factor in the *Chevron* test is clearly met.

The second factor requires an examination of the history behind the new rule, its purpose and effect. Prior to *Williams*, the courts in Oklahoma did not recognize a cause of action for loss of parental consortium. Nor was the emotional suffering of a child which results from the negligent injury of the parent by third parties an element of damages recoverable in an action brought by the parent. *See, e.g.* Oklahoma Uniform Jury Instruction[2] (Ouji–Civ) § 4.1. This new element of damages, which is to be brought in an independent action by the child, clearly distinguishes the *Williams* case from the ruling announced in *Roquet v. Webb Co.*, 436 N.W.2d 46 (Iowa 1989). In *Roquet* the court explained that prior to its announcement that the child would have an independent action for loss of consortium, the parent was able to recover this element of damages in the parent's action. Accordingly, there was no justification in Iowa for applying the child's claim retroactive since the parent had the right to assert this element of damages in the prior action.

The purpose of creating this rule in Oklahoma, is to allow for an element of recovery that was not heretofore recoverable. In view of the history, purpose and effect the Court concludes that the second factor requires retroactive application of this newly acquired avenue of relief.

---

1. As noted by the Oklahoma Supreme Court in *Williams v. Hook, supra,* twenty-seven jurisdictions refuse to recognize a cause of action for loss of parental consortium (*See,* cases cited in *Williams* footnote 2, pg. 1133). This rule has been severely criticized by legal commentators (*See,* periodicals cited in *Williams* footnote 3,

pg. 1133). Ten jurisdictions now recognize the cause of action. *Id.*

2. Prepared by the Oklahoma Supreme Court Committee for Uniform Civil Jury Instructions, dated January 29, 1979.

The third factor to be considered is the equities. The defendant asserts that the prior action was settled as to all claims addressed by Gayle Segroves and that a portion of the settlement proceeds were specifically allotted for the benefit of Wendy. Defendant therefore asserts that retroactive application of the new rule would result in a double recovery. Double recovery is not a concern in this action. The defendant has not provided the Court with any proof that this element of damages was presented to the jury in the prior case or considered by the jury in its verdict. The only indication of any benefit to the child is the fact the mother directed that a portion of *her* settlement be set aside for her child. Gayle Segroves could direct the payment of her proceeds in any manner she may elect. This fact alone does not create a risk of double recovery as to an element of damages which was not addressed in the settlement or awarded by the jury.

Additionally, the *Williams* case did not establish a new substantive claim, rather it expanded the class of person who could assert relief under an existing cause of action in Oklahoma. The defendant, Dr. Hartson, knew at the time he administered the anesthetic to Gayle Segroves that he was under a duty to use proper care or be answerable in damages. He therefore conducted himself accordingly. The fact that the Oklahoma Supreme Court has since expanded the class of persons who could recover for the doctor's negligence could not have affected the manner in which Dr. Hartson acted on the date of the surgery, had the doctor known of the court's pronouncement. Accordingly retroactive application of the new rule is not inequitable in view of Dr. Hartson's knowledge of his duty on the date of the surgery.

This distinguishes the case *sub judice* from *Brigance v. Velvet Dove Restaurant*, 725 P.2d 300 (Okla.1986) in which the court directed that its decision would have prospective application. In *Brigance* the court held that one who sells liquor, for on-the-premises consumption, has a duty to exercise reasonable care not to serve a noticeably intoxicated patron and that the vendor can be held civilly liable for injuries caused by the patron's impaired ability to operate an automobile. It would be inequitable to tavern owners to hold them accountable in damages for cases which occurred prior to the court's pronouncement in *Brigance* in that tavern owners were unaware of such a duty until it was judicially established. Tavern owners, now aware of such a duty, will be held accountable in damages for violation of that duty. Dr. Hartson, to the contrary, was under a duty of care to Gayle Segroves at the time of surgery and the *Williams* decision did not modify that duty. Thus under the *Chevron* standard, the *Williams* case has retroactive application.

### Independent Claim

Defendant argues that plaintiff is collaterally estopped from seeking additional relief in this action in that plaintiff's claim for parental consortium is derivative of her prior action and cannot be pursued in a subsequent lawsuit. First, it is clear that a loss of consortium claim is derivative of the main claim for personal injuries. Thus, had the prior action resulted in a verdict in favor of Dr. Hartson, Gayle Segroves would be collaterally estopped from seeking damages on behalf of her daughter. *See, Laws v. Fisher*, 513 P.2d 876 (Okla.1973). However, the verdict and settlement were in favor of Gayle Segroves. A loss of consortium claim although derivative to be viable is independent for recovery purposes. Gayle Segroves' right of action for consequential damages is independent and distinct from her child's right to recover for her loss. *See, e.g. Independent School District v. Crawford*, 688 P.2d 1291 (Okla.1984). Wendy Segroves' claim is derivative only as to the requirement that her mother establish liability. Once liability is established, the consortium claim is an independent action personal to Wendy. *See, Erickson v. Muskin Corp.*, 535 N.E.2d 475 (Ill.App.1989).

### Statute of Limitation

Defendant asserts that plaintiff's claim is barred by the statute of limitations. Defendant's contention is without merit. The applicable statute of limitations

regarding claims of minors is 12 O.S. § 96, which provides that a claim must be brought within one year of the child's reaching majority age. Thus defendant's assertion of statute of limitation is no defense to this action.

Based on the above analysis, the Court rejects the Magistrate's recommendation. It is therefore the Order of the Court that the motion to dismiss brought by defendant David Hartson, M.D. is hereby denied. The case is referred back to the Magistrate Judge for any additional pretrial matters.

IT IS SO ORDERED.