BARBARA SIMMONS IPOCK, Guardian Ad Litem for JUDITH I. HILL and TIMOTHY W. HILL, Individually and as Guardian Ad Litem for Timothy Jason Hill, a minor v. SAMUEL J. GILMORE

No. 838SC1282

(Filed 5 March 1985)

1. **Torts § 6.1— satisfaction of judgment against joint tort-feasors—claim against third tort-feasor for same injury barred—claim for additional injury not barred**

    Satisfaction of a judgment against two joint tort-feasors, a nurse anesthetist and a hospital, for plaintiff's hypoxic brain damage barred plaintiff from seeking further damages against defendant third joint tort-feasor, an obstetrician-gynecologist, for the brain damage. However, satisfaction of the judgment did not bar plaintiff's claim against defendant obstetrician-gynecologist for separate and distinct injuries resulting from his negligent performance of surgery removing all of plaintiff's reproductive organs without plaintiff's informed consent, and plaintiff's complaint was sufficient to give defendant notice of such claim. G.S. 1B-3(e).

2. **Physicians, Surgeons, and Allied Professions § 17.1; Rules of Civil Procedure § 56— medical malpractice—summary judgment—refusal to continue ruling until filing of affidavit—abuse of discretion—summary judgment improper**

    In a medical malpractice case in which plaintiff alleged that defendant negligently performed a total abdominal hysterectomy and bilateral salpingo-oophorectomy on her when she had consented only to a laparoscopy, the trial court abused its discretion in the denial of plaintiff's Rule 56(f) motion to continue a ruling on defendant's summary judgment motion until an expert's signed affidavit could be filed or to allow the late filing of the expert's signed affidavit, and summary judgment was improperly entered for defendant, where: plaintiff filed an unsigned affidavit by the expert; plaintiff's attorney filed an affidavit detailing his difficulty in finding an expert in gynecology who would testify for plaintiff and explaining that he had received the expert's opinion only four days prior to the hearing, that the expert left the next morning to attend a professional meeting in New Orleans and was unable to sign the affidavit prior to the hearing, and that the expert had approved the language of the affidavit by telephone; the signed affidavit was filed before the court actually ruled on the summary judgment motion; and the affidavit established genuine issues of material fact on the issue of negligent performance and issues of whether consent by plaintiff's husband to the expanded surgery was valid and whether a reasonable person, under all the surrounding circumstances, would have undergone the expanded surgery if she had been properly informed of the risks by defendant. G.S. 90-21.13(a)(1) and (3).

APPEAL by plaintiff from *Llewellyn, Judge.* Orders entered 17 November 1982 *nunc pro tunc* 1 November 1982 in Superior Court, LENOIR County. Heard in the Court of Appeals 25 September 1984.

*Boyce, Mitchell, Burns & Smith, P.A. by Robert E. Smith, and McCain & Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for plaintiff appellants.*

*LeRoy, Wells, Shaw, Hornthal & Riley, by L. P. Hornthal, Jr., for defendant appellee.*

BECTON, Judge.

On 18 February 1981, after admission to Lenoir Memorial Hospital for a laparoscopy—an elective permanent sterilization procedure under complete anesthesia—scheduled for 19 February 1981, plaintiff, Judith Hill, signed a written consent form authorizing the defendant, Dr. Samuel J. Gilmore, "to perform the following operation and/or operations—Laparoscopy with Fulguration of Tubes or Application of Hulka Clips." A laparoscopy is commonly referred to as "band-aid surgery": one or two ¼ to ½ inch abdominal incisions are made; the fallopian tubes are visualized through a lapar scope inserted in the incision; the tubes are sealed with either electric current (fulguration) or clips (Hulka clips); and the patient is released from the hospital the same day.

On 19 February 1981, after Mrs. Hill was completely anesthetized, the defendant Gilmore expanded the surgery to perform a complete abdominal hysterectomy and a bilateral salpingo-oophorectomy, removing all of Mrs. Hill's reproductive organs. Post-operatively, Mrs. Hill was noted to be confused and to have no need for pain medications despite the extreme surgery. She was subsequently diagnosed as suffering from hypoxic brain damage (brain damage caused by a lack of oxygen to the brain) incurred either during or immediately following the surgery performed by defendant Gilmore.

On 11 January 1982, plaintiff, Mrs. Hill, through her guardian ad litem, Barbara Ipock, plaintiff, Timothy W. Hill, her husband, and plaintiff, Timothy Jason Hill, her child, through his guardian ad litem, instituted this medical negligence action against defendant Gilmore, an obstetrician-gynecologist, and several other defendants, including an anesthesiologist, a nurse anesthetist and Lenoir Memorial Hospital, Inc., to recover damages for Mrs. Hill's injuries and her family members' loss of consortium. In her Complaint, Mrs. Hill alleged that (1) Defendant Gilmore negligently performed a total abdominal hysterectomy and bilateral salpingo-

oophorectomy on her; (2) he did not obtain her informed consent to a total abdominal hysterectomy and salpingo-oophorectomy; (3) he did not properly monitor and supervise her respirations and cardiac output during the surgical procedures; and (4) he was negligent in his post-operative care of her. She further alleged that:

> 9. As a direct and proximate result of the negligence of the defendants, Judith I. Hill has been caused to become brain damaged, comatose and to receive a continuing and prolonged course of resuscitative and rehabilitative hospitalization and therapy.

> 10. As a direct and proximate result of the negligence of the defendant, Judith I. Hill, because of her damaged brain, is severely limited in her motor activities, cannot walk without assistance, cannot talk intelligibly and cannot care for herself in any material respects.

> 11. As a direct and proximate result of the negligence of the defendants, Judith I. Hill has been caused to incur medical expenses, loss of wages, pain, suffering and extreme mental anguish.

In his Answer, filed 11 February 1982, defendant Gilmore denied the material allegations of the Complaint. On 5 April 1982 defendant Gilmore filed a motion for summary judgment. However, because discovery had not been completed in the matter, the trial court granted plaintiffs' Rule 56(f) motion for a continuance of the hearing until 1 November 1982. By that time plaintiffs had filed answers to interrogatories and, on the day of the hearing, plaintiffs filed a second Rule 56(f) motion. This time plaintiffs asked the trial court

> for an order either allowing the late filing of the affidavit of Dr. Robert L. Anderson, one of the expert witnesses for plaintiff in this action, or to continue the ruling on defendant Gilmore's motion for summary judgment until such time that Dr. Anderson's affidavit can be filed with the court for the court's consideration of it.

In support of plaintiffs' motion, plaintiffs' attorney filed his own affidavit explaining why the accompanying affidavit of Dr. Anderson, a physician board-certified in obstetrics and gynecology and

an associate professor at the Eastern Virginia Medical School in Norfolk, Virginia, was unsigned.

After hearing arguments at the summary judgment hearing on 1 November 1982, the trial judge took all motions argued under advisement. While the trial court was still considering its ruling on the motions, plaintiffs filed a signed affidavit of Dr. Anderson, identical to the previously submitted unsigned affidavit. Notwithstanding, on 17 November 1982, the trial court entered an order denying plaintiffs' Rule 56(f) motion and also entered an order allowing defendant Gilmore's motion for summary judgment.

Prior to the trial all the remaining defendants obtained summary judgment on the issue of plaintiff, Timothy Jason Hill's loss of parental consortium. During the trial one defendant, the anesthesiologist, settled with the remaining plaintiffs, Mr. and Mrs. Hill. A jury found against the remaining two defendants, the nurse anesthetist and Lenoir Memorial Hospital and awarded Mrs. Hill $600,000 for her injuries and Mr. Hill $100,000 for his loss of consortium. In its judgment dated 28 September 1983 the trial court reduced Mrs. Hill's award $100,000, presumably to reflect the earlier settlement. On 6 October 1983 the judgment was satisfied. On 6 October 1983 the trial court entered a court approved judgment of settlement on Timothy Jason Hill's claim for a loss of parental consortium against the nurse anesthetist and Lenoir Memorial. The defendant nurse and hospital wished to avoid an appeal. The judgment for $2,850 was satisfied the same day, 6 October 1983.

Plaintiffs appeal from the trial court's grant of defendant Gilmore's motion for summary judgment.

I

[1] Defendant Gilmore contends that the 6 October 1983 satisfaction of the 28 September and 6 October 1983 judgments against the two other remaining defendants have rendered this appeal moot. He relies on the statutory language of N.C. Gen. Stat. Sec. 1B-3(e) (1983), which provides, in pertinent part:

> The recovery of judgment against one tort-feasor for the injury or wrongful death does not of itself discharge the other tort-feasors from liability to the claimant. The satisfac-

tion of the judgment discharges the other tort-feasors from liability to the claimant for the *same injury* or wrongful death, but does not impair any right of contribution.

(Emphasis added.) G.S. Sec. 1B-3(e) codifies the common-law rule applicable to joint tort-feasors. Although an injured party may pursue and obtain judgments against all joint tort-feasors for a single injury, he may have only one satisfaction. *Bowen v. Iowa Nat'l Mut. Ins. Co.*, 270 N.C. 486, 155 S.E. 2d 238 (1967). "[J]oint tort-feasors are persons who act together in committing the wrong, or persons who, independently and without concert of action or unity of purpose, commit separate acts which concur as to time and place and unite in proximately causing the injury." *Simpson v. Plyler*, 258 N.C. 390, 393, 128 S.E. 2d 843, 845 (1963). The focus is on the indivisibility of the injury, *see Phillips v. Hassett Mining Co.*, 244 N.C. 17, 92 S.E. 2d 429 (1956), which renders apportionment of damages among the individual tort-feasors impossible. *Prosser & Keeton on the Law of Torts* Sec. 52, at 347 (W. Keeton ed. 5th ed. 1984) (hereinafter *Prosser*).

To determine whether this appeal is indeed moot, we must first determine which of Mrs. Hill's injuries were compensated by the 6 October 1983 satisfaction. The issues submitted to the jury, resulting in the 28 September 1983 judgment, involved the nurse anesthetist's negligent anesthetic care and Lenoir Memorial Hospital's liability as his employer. From the allegations in the Complaint, it is clear that the nurse anesthetist's negligent anesthetic care is only proximately related to Mrs. Hill's hypoxic brain damage. Although the plaintiffs argue in their reply brief that the brain damage caused by defendant Gilmore is not the "same injury" as the brain damage caused by the other defendants, we are not persuaded. The majority of plaintiffs' allegations of negligence against the various defendants are so similar as to render the brain damage indivisible. As to defendant Gilmore, the plaintiffs allege:

> c. He failed to properly monitor and supervise the respirations and cardiac output of Judith I. Hill during his surgical procedures;
>
> d. He failed to properly treat Judith I. Hill post-operatively for her hypoxic brain damage and to require defendant Muther to treat his patient for hypoxic brain damage rather

than a 'conversion reaction,' although he had reasonable knowledge to know that a 'conversion reaction' was an entirely unreasonable diagnosis of Judith I. Hill's postoperative condition.

e. He failed to properly supervise and monitor the actions of defendants Dean and Walker in their maintenance of Judith I. Hill's respirations and cardiac output during his surgical procedures.

f. He failed to record and chart in his patient's hospital record the pertinent events concerning Judith I. Hill's respiratory or cardio-respiratory arrest.

g. He failed to properly evaluate, preoperatively, Judith I. Hill's physical ability to withstand major operative procedures.

As to the other defendants, the plaintiffs allege:

a. They failed to properly maintain an open airway, respirations and cardiac output of Judith I. Hill during her surgical procedures on February 19, 1981.

b. They failed to properly administer preoperative, operative and postoperative medications to Judith I. Hill for, during and after her surgery.

c. They failed to properly resuscitate, treat and monitor the hypoxic and post-hypoxic conditions following the arrest of Judith I. Hill while in the operating room.

d. They failed to perform a proper preanesthetic evaluation of Judith I. Hill and, in particular, failed to insist on electrolytes and a C.B.C.

We conclude that the 6 October 1983 satisfaction bars plaintiffs from seeking further damages for Mrs. Hill's brain damage.

The survival of the plaintiffs' cause of action against defendant Gilmore now depends on whether their Complaint sufficiently alleges only a single injury, the brain damage caused by the defendants as joint tort-feasors, or, in addition, separate and distinct injuries caused by the defendant Gilmore alone. *See Prosser, supra,* Sec. 52, at 348. That is, in addition to plaintiff's hypoxic brain damage claim, did plaintiffs also seek to recover damages

resulting from defendant Gilmore's negligent performance of additional surgery on her, which was done without her consent?

Under the "notice theory of pleading" a complainant must state a claim sufficient to enable the adverse party to understand the nature of the claim, to answer, and to prepare for trial. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970); *Redevelopment Comm'n v. Grimes*, 277 N.C. 634, 178 S.E. 2d 345 (1971); N.C. Gen. Stat. Sec. 1A-1, Rule 8(a) (1983). In their claim for relief, the plaintiffs develop Mrs. Hill's brain damage in great detail:

> 9. As a direct and proximate result of the negligence of the defendants, Judith I. Hill has been caused to become brain damaged, comatose and to receive a continuing and prolonged course of resuscitative and rehabilitative hospitalization and therapy.

> 10. As a direct and proximate result of the negligence of the defendants, Judith I. Hill, because of her damaged brain, is severely limited in her motor activities, cannot walk without assistance, cannot talk intelligibly and cannot care for herself in any material respects.

However, we find that the allegations against Dr. Gilmore, discussed *supra*, and the claim for relief:

> 11. As a direct and proximate result of the negligence of the defendants, Judith I. Hill has been caused to incur medical expenses, loss of wages, pain, suffering and extreme mental anguish.

were sufficient to put defendant Gilmore on notice of separate and distinct injuries resulting from his negligent performance of a total abdominal hysterectomy and bilateral salpingo-oophorectomy and his failure to obtain Mrs. Hill's informed consent. Therefore, the appeal is not moot, and the plaintiffs are able to proceed with their case.[1]

---

1. Since the trial court ruled that the defendant Gilmore was not negligent, we therefore decline to rule on the child's substantive claim for loss of parental consortium. We do note, for the trial court's benefit that in other suits involving an indirect impact on children, our appellate courts have declined to recognize a cause of action for loss of parental consortium. *See Henson v. Thomas*, 231 N.C. 173, 56 S.E. 2d 432 (1949); *Azzolino v. Dingfelder*, 71 N.C. App. 289, 322 S.E. 2d 567 (1984). However, arguably in this case, the impact on the child is directly foreseeable.

## II

**[2]** On appeal the plaintiffs bring forward four assignments of error dealing with the sufficiency of the evidence of informed consent and lack of negligence and the trial court's denial of the plaintiffs' Rule 56(f) motion. We need only address the Rule 56(f) argument. As stated by the plaintiffs in their brief:

> The trial court committed error by denying plaintiffs' Rule 56(f) motion when the plaintiffs filed an unsigned affidavit from Dr. Robert Anderson (sufficient to rebut defendant's motion) along with a signed affidavit of plaintiffs' counsel stating that he had read the contents of the unsigned affidavit to Dr. Anderson over the telephone, that Dr. Anderson had approved the language of the affidavit and had agreed to act as plaintiffs' expert witness at trial, that Dr. Anderson had been out of town and thus had been unable to sign the affidavit prior to the hearing and when, further, the signed affidavit of Dr. Anderson was filed with the court prior to the actual ruling on the motion.

We agree that on the facts of this case the trial court abused its discretion in denying the plaintiffs' Rule 56(f) motion. Further, we find Dr. Anderson's affidavit sufficient to oppose defendant Gilmore's motion for summary judgment. We therefore vacate and remand for further proceedings consistent with this decision.

### A.

Summary judgment should be granted when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Gore v. Hill,* 52 N.C. App. 620, 279 S.E. 2d 102, *disc. rev. denied,* 303 N.C. 710, --- S.E. 2d --- (1981); N.C. Gen. Stat. Sec. 1A-1, Rule 56(c)(1983). However, summary judgment is a drastic remedy to be implemented with caution, especially in negligence cases. *Williams v. Carolina Power & Light Co.,* 296 N.C. 400, 250 S.E. 2d 255 (1979).

Subdivision (f) of Rule 56 is "an additional safeguard against an improvident or premature grant of summary judgment . . . . Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality." 10A C. Wright, A. Miller & M.

Kane, *Federal Practice and Procedure* Sec. 2740, at 532 (2d ed. 1983). N.C. Gen. Stat. Sec. 1A-1, Rule 56(f) (1983) grants the trial court the discretion to "refuse the application for judgment or . . . order a continuance to permit affidavits to be obtained . . ." if it "appear[s] from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavits facts essential to justify his opposition . . . ." In applying Rule 56(f) liberally, the federal courts have focused on the visible efforts of the party opposing summary judgment: Has he been diligent and acted in good faith or has he been lazy or dilatory? *See* 10A C. Wright, *supra,* Sec. 2740. The record nowhere suggests that plaintiffs' counsel in this case had been dilatory. As plaintiffs put it in their brief:

> This was a medically complex case in which the hospital records had been altered and the brain-damaged patient had been misdiagnosed as a psychiatric case; thus, plaintiffs were attempting to locate expert witnesses not only in obstetrics and gynecology, but also in neurology, anesthesiology and document alteration. (Note that plaintiffs had already filed signed affidavits from a neurologist, Dr. Roses, and an anesthesiologist, Dr. Collins, to support their position that Judith Hill suffered from hypoxic brain damage as a result of events occurring during the surgery performed by Dr. Gilmore.) Under these circumstances, it was an abuse of discretion for the trial court to deny plaintiffs' Rule 56(f) motion which simply asked for time to obtain a signature on an already-approved affidavit.

Sufficient time for the completion of discovery is one major goal of Rule 56(f). *Id.*

> Another illustrative situation to which Rule 56(f) may apply is where the opposing party has not been able to locate a witness, or having located him has been unable to secure an affidavit from him and has not had time to take his deposition and such witness has knowledge of material facts which would defeat or aid in defeating the motion for summary judgment. The opposing party should detail the above situation by his own affidavit. The Court may then, in the exercise of a sound discretion, grant or deny a continuance or make some other just disposition of the motion for summary judg-

ment, depending on whether it believes the affidavit has merit.

6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* Sec. 56.24, at 1436 (2d ed. 1982).

Ideally a Rule 56(f) affidavit should be served prior to the day of the hearing, *see Millsaps v. Wilkes Contracting Co.*, 14 N.C. App. 321, 188 S.E. 2d 663, *cert. denied*, 281 N.C. 623, 190 S.E. 2d 466 (1972); G.S. Sec. 1A-1, Rule 56(c) (1983); however, a trial court may consider a Rule 56(f) affidavit received the day of the hearing. 6 J. Moore, *supra*, at 1422 n. 4.

B.

We begin with a summary of the events of 18 and 19 February 1981. On 18 February 1981 Mrs. Hill signed a form entitled *Consent to Operation,* authorizing

Dr. Gilmore to perform the following operation and/or operations Laparoscopy with Fulguration of Tubes or Application of Hulka Clips.

2. The operation is to include whatever procedures are required in attempting to accomplish such purpose. If any conditions are revealed at the time of the operation that were not recognized before and which call for procedures in addition to those originally contemplated, I authorize the performance of such procedures.

3. The above named surgery is considered necessary. Its advantages and possible complications, if any, . . . were explained to me by Dr. Gilmore.

The following day, 19 February 1981, Mrs. Hill underwent the proposed laparoscopy. According to Dr. Gilmore's affidavit, "[w]idespread adhesions completely obscured the patient's pelvic organs and rendered it impossible to complete the sterilization of the patient as originally proposed." Dr. Gilmore decided to proceed with a bilateral partial salpingectomy through a "small low transverse" abdominal incision. However, after making the incision, he

discovered that the tubes and ovaries were completely bound down bilaterally by adhesions; that there was a cystic mass

> on the left; and that there was a considerable amount of
> chronic infection. As a result of these discoveries, it was
> manifest that the proposed bilateral partial salpingectomy
> could not be safely completed; that a total abdominal hyster-
> ectomy, bilateral salpingo-oophorectomy [removal of the
> uterus, both ovaries and both fallopian tubes] was clearly in
> the patient's best interest; and that, . . . to delay the per-
> formance of this procedure posed serious medical risks to the
> patient.

At this point, Dr. Gilmore had a conversation with Mr. Hill, ob-
tained consent from him, and proceeded with the total abdominal
hysterectomy and bilateral salpingo-oophorectomy, removing all
of Mrs. Hill's reproductive organs. Plaintiffs, of course, contend
that this major incision and major surgery constituted un-
necessary surgery and was performed even though there was no
emergency.

In support of his motion for summary judgment defendant
Gilmore filed his own affidavit and the affidavit of his co-surgeon,
Dr. Rudolph I. Mintz, who joined him after the initially attempted
laparoscopy. Both doctors stated that Dr. Gilmore had not been
negligent in his performance of the surgical procedures (the ab-
dominal hysterectomy and bilateral salpingo-oophorectomy). Fur-
ther, the doctors stated that the obtaining of "the patient's
consent" was "in accordance with the standards of practice among
obstetrical and gynecological specialists and surgeons with similar
training and experience in Lenoir County and all other similar
communities with which I am familiar." Finally, Dr. Mintz stated:

> a reasonable person, under all the surrounding circumstances
> of the patient in this case would have undergone a complete
> hysterectomy, with bilateral salpingo-oophorectomy, had she
> been advised of the proposed procedure and of the usual and
> most frequent risks and hazards inherent therein which are
> recognized and followed by other obstetrical and gynecologi-
> cal surgeons and specialists in Lenoir County and other
> similar communities with which I am familiar. There were far
> more serious risks to the patient in not going forward with
> the surgery, including the risk of having stirred up quiescent
> infection which might have endangered the patient's life, as
> well as uncertainty as to whether the cystic mass contained a
> malignancy.

The substance of the doctors' affidavits tracks the language of N.C. Gen. Stat. Sec. 90-21.13(a)(1) and (3) (1981). The informed consent statute provides, in pertinent part:

(a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient or the patient's spouse, parent, guardian, nearest relative or other person authorized to give consent for the patient where:

(1) The action of the health care provider in obtaining the consent of the patient or other person authorized to give consent for the patient was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and

(2) A reasonable person from the information provided by the health care provider under the circumstances, would have a general understanding of the procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or

(3) A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

(b) A consent which is evidenced in writing and which meets the foregoing standards, and which is signed by the patient or other authorized person, shall be presumed to be a valid consent. This presumption, however, may be subject to rebuttal only upon proof that such consent was obtained by fraud, deception or misrepresentation of a material fact.

(c) A valid consent is one which is given by a person who under all the surrounding circumstances is mentally and physically competent to give consent.

G.S. Sec. 90-21.13 (1981). The signed consent form is only presumed valid if it meets the standards of (a). G.S. Sec. 90-21.13(b)

(1981); *Estrada v. Jaques,* 70 N.C. App. 627, 321 S.E. 2d 240 (1984). In moving for summary judgment, the defendant Gilmore tried to establish, as a matter of law, that the informed consent was obtained in accordance with the professional standards of practice in the community, G.S. Sec. 90-21.13(a)(1) (1981) and that a reasonable person, under all the surrounding circumstances, would have undergone the total abdominal hysterectomy and bilateral salpingo-oophorectomy, if she had been advised in accordance with the provisions of (a)(1) and (2), G.S. Sec. 90-21.13(a)(3) (1981).

Dr. Anderson's affidavit in opposition to defendant Gilmore's motion for summary judgment establishes genuine issues of material fact on both the negligent performance and the informed consent issues. First, Dr. Anderson stated that, in his opinion, the care rendered by Dr. Gilmore did not comply with the appropriate standard of care. Second, he stated that Mrs. Hill's 18 February 1981 consent did not authorize a total hysterectomy. Finally, he stated that there was "no medical or surgical necessity" to proceed with a total abdominal hysterectomy after failing to complete the laparoscopy without first obtaining Mrs. Hill's informed consent.

Implicit in Dr. Anderson's statements is defendant Gilmore's failure to meet the burden of proof under G.S. Sec. 90-21.13(a)(1) and (3) (1981). Dr. Anderson alleges that Mrs. Hill's initial signed consent to a laparoscopy did not authorize anything beyond the laparoscopy, including the bilateral partial salpingectomy. Reviewing the terms of the signed consent, we believe that the language does not conclusively authorize a total abdominal hysterectomy. It refers to the laparoscopy as the proposed operation and authorizes the defendant Gilmore to perform "whatever procedures are required in attempting to accomplish such purpose," arguably the laparoscopy. Even assuming that Mrs. Hill would have undergone the laparoscopy if she had known that the bilateral partial salpingectomy were a known risk, there is no authorization for expanding the surgery to a total abdominal hysterectomy. Therefore, unless defendant Gilmore obtained a valid consent from Mr. Hill, his expansion of the surgery to a total abdominal hysterectomy was unauthorized. Under G.S. Sec. 90-21.13(c) (1981), "a valid consent is one which is given by a person who under all the surrounding circumstances is mentally and physically competent to give consent." A husband is not his wife's

**Ipock v. Gilmore**

authorized agent simply by virtue of the marital relationship. *Dubose Steel, Inc. v. Faircloth,* 59 N.C. App. 722, 298 S.E. 2d 60 (1982). However, in an emergency, a spouse may have the capacity to consent to lifesaving surgery. *Prosser, supra,* Sec. 18, at 115 & n. 26. Dr. Anderson's affidavit establishes a material issue as to whether Mr. Hill's consent "under all the surrounding circumstances" was valid, considering that there was no emergency. And, in addition, Dr. Anderson's affidavit establishes a material issue as to whether "a reasonable person, under all the surrounding circumstances, would have undergone such treatment . . .", G.S. Sec. 90-21.13(a)(3) (1981), if, as alleged by Dr. Anderson, the total abdominal hysterectomy was unnecessary surgery.

## C.

Returning to the plaintiffs' Rule 56(f) motion, we summarize the plaintiffs' attorney's explanation in his own affidavit for Dr. Anderson's unsigned affidavit. Plaintiffs' attorney detailed his difficulty in finding a gynecologist who would testify for plaintiff and emphasized that he had only received Dr. Anderson's opinion four days prior to the hearing. Dr. Anderson left the next morning from his home in Norfolk, Virginia, for a professional meeting in New Orleans, and was therefore unable to sign the affidavit prior to the hearing. Given the fact that plaintiffs had indeed located a witness capable of defeating the defendant Gilmore's motion for summary judgment and had done all but have the affidavit signed, we believe that the trial court abused its discretion in denying the plaintiffs' Rule 56(f) motion. Moreover, based on our analysis of Dr. Anderson's affidavit, we conclude that defendant Gilmore's motion for summary judgment should have been denied. We, therefore, vacate and remand for further proceedings consistent with this decision.

Vacated and remanded.

Chief Judge HEDRICK and Judge PHILLIPS concur.