In re Se. Eye Ctr. (EBW Judgment), 2017 NCBC 41.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 11322

IN RE SOUTHEASTERN EYE
CENTER-JUDGMENTS

ORDER AND OPINION
(EBW JUDGMENT)

1.     **THIS MATTER** is before the Court upon (1) Douglas Harris's ("Harris") Motion to Release Judgment ("Motion to Release"), (2) Harris's Notice of Right to Have Exemptions Designated ("Notice of Exemptions"), and (3) Receiver Gerald A. Jeutter, Jr.'s (the "Receiver") Motion for Application of Full Faith and Credit and Res Judicata to Federal Bankruptcy Order ("Motion for Full Faith and Credit") (collectively, the "Motions") in the above-captioned case.

2.     Having considered the Motions, the parties' briefs in support of and in opposition to the Motions, the appropriate evidence of record, and the arguments of counsel at the hearing on March 31, 2017, the Court, as set forth below, **GRANTS** Harris's Motion to Release, **DENIES as moot** Harris's Notice of Exemptions, **DENIES** the Receiver's Motion for Full Faith and Credit, and makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**.

> *Oak City Law LLP, by Robert E. Fields, III and Samuel Pinero II, for Receiver Gerald A. Jeutter, Jr.*
>
> *Defendant Douglas S. Harris, pro se.*

Bledsoe, Judge.

# I.

## FINDINGS OF FACT

3.     In January 2005, EBW, Inc. and EBW Laser, Inc. (the "Debtors") sought relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") before the Honorable William L. Stocks of the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court") (collectively, the "Bankruptcy Proceeding"). *In re EBW Laser, Inc.*, Nos. 05-10220C-7G, 05-10221C-7G, 2012 Bankr. LEXIS 3767, at *4 (Bankr. M.D.N.C. Aug. 14, 2012) (describing Bankruptcy Proceeding).

4.     The Bankruptcy Proceeding was subsequently converted from a reorganization under chapter 11 to a liquidation under chapter 7 of the Bankruptcy Code, and on March 30, 2005, the Bankruptcy Court appointed Charles M. Ivey as the chapter 7 trustee for the Debtors (the "Trustee"). *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *4; *In re EBW Laser, Inc.*, Nos. 05-10220C-7G, 05-10221C-7G, slip. op. at 1  (Bankr. M.D.N.C. Mar. 30, 2015), ECF No. 105.

5.     James Mark McDaniel ("McDaniel") and C. Richard Epes ("Epes") were principals and officers of the Debtors. *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *4.  On June 11, 2009, McDaniel and Epes, through their then attorney Harris, filed a civil action in Guilford County, North Carolina Superior Court while the Bankruptcy Proceeding was ongoing (the "State Court Action"). *See McDaniel v. Blust*, No. 1:09CV507, 2010 U.S. Dist. LEXIS 1411, at *2 (M.D.N.C. Jan. 8, 2010); *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *7.

6.     The State Court Action was timely removed to federal district court, after which the federal district court dismissed the removed action for lack of subject matter jurisdiction under the Barton Doctrine. *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *8–9. The Barton Doctrine requires a plaintiff to obtain leave from the court that appointed the trustee (here the Bankruptcy Court) before another court (here the North Carolina state court and the federal district court) may obtain subject matter jurisdiction over a suit against the trustee or the trustee's professionals for acts committed in their official capacity. *See, e.g.*, *McDaniel v. Blust*, 668 F.3d 153, 156–57 (4th Cir. 2012). In 2012, the United States Court of Appeals for the Fourth Circuit affirmed the federal district court's application of the Barton Doctrine to dismiss the State Court Action after removal to federal court. *Id.* at 157–58.

7.     On October 16, 2009, the Trustee moved for relief in the Bankruptcy Proceeding against Harris, Epes, and McDaniel based on their violation of the Barton Doctrine. The Trustee sought an award of damages, including for the attorneys' fees and expenses the Trustee incurred in the defense of the unauthorized suit and in advancing the motion seeking damages. *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *3, 23.

8.     The Bankruptcy Court granted the motion on October 14, 2012 and "ordered, adjudged and decreed that Charles M. Ivey, III, as Chapter 7 Trustee for EBW Laser, Inc. and EBW, Inc., have and recover from James Mark McDaniel, C. Richard Epes and Douglas S. Harris, jointly and severally, the sum of $320,980.23," (Harris's Mot. Release J. Ex. A), for the attorneys' fees and expenses the Trustee

incurred as a result of their violation of the Barton Doctrine (the "Barton Judgment" or "Judgment"). *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 3767, at *71.[1]

9.      Thereafter, the Trustee entered into separate settlement agreements with Epes and McDaniel (the "Settlement Agreements") to resolve the Barton Judgment as well as certain ongoing litigation with Epes, McDaniel, and several other defendants (the "Trustee Recovery Litigation"). (Receiver's Mot. Full Faith and Credit Ex. A, Order Approving Settlement of Controversy at 4, *In re EBW Laser, Inc.*, Nos. 05-10220C-7G, 05-10221C-7G (Bankr. M.D.N.C. Oct. 16, 2013), ECF No. 625) (hereinafter "Order Approving Barton Judgment Settlement").[2]  Both Settlement Agreements were subject to the Bankruptcy Court's approval, which the Trustee sought through his Motion for Authority to Settle Controversy, filed August 30, 2013. (Order Approving Barton Judgment Settlement 4.)

10.      The Settlement Agreements required that: (i) Epes's wife, Bessie K. Epes ("Ms. Epes") pay $1,000,000 to the Trustee; (ii) the Trustee "assign unto Bessie Epes the Barton Judgment, provided that the Trustee shall first set off the portion of the Barton Judgment which is equal to the amount of the previously allowed Chapter 11

---

[1] The Judgment was recorded with the Register of Deeds of Guilford County, North Carolina on August 30, 2012 in Book 7386, page 1740. (Receiver's Mot. Full Faith & Credit Ex. B.) *See* N.C. Gen. Stat. § 1-229 ("In all legal proceedings, touching the right of parties derived under such judgment, a certified copy from the register's books is evidence of its existence and of the matters therein contained, as fully as if proved by a perfect transcript of the whole case.").

[2] The Trustee filed the Trustee Recovery Litigation in January 2007 against Epes, McDaniel and others for alleged fraudulent transfers, preferential transfers, unauthorized post-petition transfers, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unfair and deceptive trade practices. *In re EBW Laser, Inc.*, 2012 Bankr. LEXIS 376, at *4–5.

expense for Douglas Harris' attorney fees, i.e., $27,000"; (iii) the Trustee "dismiss the Trustee Recovery Litigation with prejudice"; and (iv) Epes, McDaniel, and the other settling defendants "not be allowed a claim in the bankruptcy proceedings of the Debtors[.]" (Order Approving Barton Judgment Settlement 5–6.)

11.     Harris filed an objection to the Settlement Agreements but withdrew his objection after the Trustee agreed to withdraw previously-filed motions seeking to hold Harris in civil contempt and after Harris agreed to allow the $27,000 set off. (Order Approving Barton Judgment Settlement 5, 6–7, 10.)

12.     On October 16, 2013, the Bankruptcy Court granted the Trustee's Motion for Authority to Settle Controversy, authorized the Trustee to settle the matters as set forth in the Settlement Agreements, and authorized the parties to the Settlement Agreements "to take the actions necessary to consummate the settlement, including setting off $27,000 of the Barton Judgment against and in satisfaction of the $27,000 Chapter 11 administrative expense claim of Douglas S. Harris, following which the Trustee [was] to dismiss the Trustee's motions for civil contempt against Douglas S. Harris." (Order Approving Barton Judgment Settlement 10–11; *see also* Receiver's Mot. Full Faith & Credit Ex. B & Harris's Mot. Release Judgment Ex. B, Settlement Agreement and Release at 3, *In re EBW Laser, Inc.*, Nos. 05-10220C-7G, 05-10221C-7G (Bankr. M.D.N.C. Aug. 30, 2013), ECF No. 615-1).[3]

---

[3] Harris filed but later withdrew an objection to the Trustee's Motion for Authority to Settle Controversy. (Order Approving Trustee Settlement 5, 6–7, 10.) As a result, the Bankruptcy Court did not rule on Harris's objection.

13. On December 5, 2013, the Trustee, "in accordance with the [Settlement Agreements,] . . . assign[ed] to Bessie K. Epes, without recourse or warranty . . . [the Barton Judgment] reduced by the partial payment [resulting from the $27,000 offset for Harris's administrative expense claim]". (Receiver's Mot. N.C. Gen. Stat. § 1-358 Ex. C.)

14. On May 13, 2014, Ms. Epes filed a notarized document titled "Release of Judgment as to C. Richard Epes and James Mark McDaniel Only" with the Guilford County Clerk of Superior Court ("Release of Barton Judgment" or "Release"). The Release specifically provided as follows:

> Bessie K. Epes, as Assignee of Plaintiffs, hereby releases and authorizes the Judgment in the above action, a copy of which is attached hereto as Exhibit 1, to be marked as paid and satisfied in full with respect to C. Richard Epes and James Mark McDaniel only.
>
> This Release specifically does not apply to Defendant Douglas S. Harris, and the Judgment and the Assignment of Judgment in this action against him remains.

(Harris's Mot. Release of J. Ex. C).

15. On February 25, 2015, this Court appointed the Receiver to serve as receiver for several entities in which Epes and Ms. Epes (together, the "Epeses") then held ownership and control interests: Central Carolina Surgical Eye Associates, P.A., HUTA Leasing, LLC, Southeastern Eye Management, Inc., Southeastern Cataract Laser Center, PLLC, and EMS Partners, LLC (collectively, the "Corporate Defendants"). *Old Battleground Props., Inc. v. Cent. Carolina Surgical Eye Assocs., P.A.*, 15 CVS 1648 (N.C. Super. Ct. Feb. 25, 2015).

16. On April 27, 2015, the matter styled *Charles M. Ivey, III, as Chapter 7 Trustee for EBW Laser, Inc. and EBW, Inc. v. James Mark McDaniel, C. Richard Epes and Douglas Harris* (Guilford County Superior Court, No. 12-CVS-11322) (the "EBW Judgment Action") was designated as an exceptional case under Rule 2.1 of the General Rules of Practice for the Superior and District Court and assigned to the undersigned by the Chief Justice of the North Carolina Supreme Court.

17. On May 19, 2015, the Epeses and the Receiver entered into a settlement agreement, subject to court approval, by which (i) the Epeses agreed "to make substantially all of their assets available to the Receiver for use in negotiating resolutions of claims against the Corporate Defendants" in exchange for a release by the Receiver, on behalf of the Corporate Defendants, of all the Corporate Defendants' claims against the Epeses, and (ii) the Epeses agreed to transfer "substantially all of their assets and most of their debts" to two entities, DRE NEWCO, LLC ("DRE") and KEPES NEWCO, LLC ("KEPES"), each of which was to be owned by trusts under which the Epeses were beneficiaries, and each of which was to be placed into receivership under the Receiver's control (the "Epeses Settlement"). *See In re Se. Eye Ctr. – Pending Matters & Judgments*, 15 CVS 1648, 12 CVS 11322 ¶¶ 4, 5, 12 (N.C. Super. Ct. July 14, 2015); (Receiver's Joint Mot. Approve Settlement Agreement and Release, Ex. A.)

18. On June 19, 2015, this Court consolidated a number of judgments and supplemental proceedings pending before the Court, including the EBW Judgment

Action, into the Master File 12 CVS 11322 (Guilford) with the caption as set forth above.

19. On July 14, 2015, the Court approved the Epeses Settlement, placed DRE and KEPES into receivership, and appointed the Receiver as receiver for DRE and KEPES as well as for three additional entities in which the Epeses held ownership and control interests: Surgical Eye Center, Inc.; ME Greensboro, LLC; HUTA Leasing Company; and MEM of High Point, LLC. *See In re Se. Eye Ctr. – Pending Matters & Judgments*, 15 CVS 1648, 12 CVS 11322 (N.C. Super. Ct. July 14, 2015) ("Order Approving Epeses Settlement").

20. Also on July 14, 2015, Ms. Epes assigned the Barton Judgment to KEPES, specifically stating that she was assigning to KEPES "without recourse, all of its [sic] right, title, and interest in and to that certain Judgment in the total judgment amount of $320,980.23, plus post-judgment interest at the legal rate from date of judgment until fully paid." (Receiver's Mot. N.C. Gen. Stat. § 1-358 Ex. E; Harris's Resp. Opp. Receiver's Mot. N.C. Gen. Stat. § 1-358 Ex. 2.)

21. On February 2, 2017, Harris filed the Motion to Release with the Guilford County Clerk of Superior Court (the "Clerk") under N.C. Gen. Stat. § 1-242, contending that the Release of the Barton Judgment released him of all liability on the Judgment as a matter of North Carolina law and asking the Clerk to cancel the Judgment and thus cause collection efforts against him by the Guilford County Sheriff to cease. (Harris's Mot. Release J. 1.)

22. On February 13, 2017, the Receiver filed the Motion for Full Faith and Credit on behalf of KEPES. The Receiver argued that the Court should stay the hearing then scheduled before the Clerk on the Motion to Release until the Court could hear the Motion for Full Faith and Credit, deny Harris's Motion to Release, and accord to the Judgment full faith and credit. (Receiver's Mot. Full Faith & Credit 1.) At the same time, the Receiver also filed the Motion for Relief under N.C. Gen. Stat. § 1-358 on behalf of KEPES, which the Court denied, in the exercise of its discretion, on February 23, 2017.

23. On February 15, 2017, the Court entered an order staying the hearing scheduled on Harris's Motion to Release before the Clerk and the Sale of Harris's personal property by the Guilford County Sheriff. *See Webb v. McKeel*, 144 N.C. App. 381, 385–86, 551 S.E.2d 440, 442–43 (2001) (holding that clerk of court did not have exclusive jurisdiction over the enforcement and satisfaction of judgments and that trial court correctly assumed jurisdiction to consider the motion for cause under N.C. Gen. Stat. § 1-242).

24. That same day, Harris filed the Motion to Release with this Court. Two days later, on February 17, 2017, Harris filed his Notice of Exemptions. Harris pleads accord and satisfaction in his Motion to Release and urges the Court to release the Judgment based on his contention that the execution and filing of the Release satisfied the Judgment in its entirety. (Harris Br. Supp. Mot. Release J. 4–5.)

25. The Court held a hearing on the Motions on March 31, 2017, at which Harris and counsel for the Receiver were present. McDaniel also made an appearance at the

hearing, but because McDaniel was not a party to, or affected by, the Motions, the Court does not consider McDaniel's statements at the hearing in considering the Motions. The Motions are now ripe for resolution.

II.

CONCLUSIONS OF LAW

26. Resolution of each Motion depends upon whether the Barton Judgment is enforceable. The Court first considers Harris's Motion to Release.

27. As noted above, Harris argues that the Judgment is now unenforceable because it has been satisfied as a matter of North Carolina law. Specifically, Harris contends that Ms. Epes's Release, which she filed with the Guilford County Clerk as a matter of public record, released Harris, as well as McDaniel and Epes, under North Carolina law, despite the express language in the Release stating that it did not apply to Harris. (Harris's Brief Supp. Mot. Release J. & Notice of Exemptions 5; Harris's Reply Receiver's Resp. Mot. Release J. 2; Harris's Brief Opp. Receiver's Mot. Full Faith and Credit 2–5.) As a result, Harris argues that the Judgment should be marked satisfied and notated to reflect that Harris is released and has no further liability on the Judgment. (Harris's Brief Supp. Mot. Release J. 7; Harris's Reply Receiver's Resp. Mot. Release J. 5.)

28. The Receiver argues in opposition that federal law governs whether the Judgment is enforceable, and that, under applicable federal law, Ms. Epes's Release did not release Harris from the Judgment. (Receiver's Resp. Harris Mot. Release J. 2.) Thus, the Receiver contends that Harris's Motion to Release should be denied.

A. Consideration of the Motion to Release under Rule 60(b)(5)

29.     Harris's Motion to Release was originally filed with Clerk under N.C. Gen. Stat. § 1-242 and subsequently re-filed with this Court.  The Court has carefully considered the Motion to Release and the relief requested and, for the reasons set forth below, concludes that it is proper for the Court to consider the Motion to Release as a motion under N.C. R. Civ. P. 60.

30.     Rule 60(b) provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for one of the following reasons:
> . . .
> (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . .

N.C. R. Civ. P. 60(b)(5).

31.     Harris's Motion to Release seeks relief–cancellation of the Judgment as satisfied–fully consistent with and as contemplated by Rule 60(b)(5).  As such, the Court concludes, in the exercise of its discretion, that it is appropriate to consider the Motion to Release as a motion under Rule 60(b).  The fact that Harris did not move under Rule 60(b) is irrelevant. *See, e.g.*, *Pope v. Pope*, 786 S.E.2d 373, 378 (N.C. Ct. App. 2016) ("[A] trial court may even act *sua sponte* to grant relief under Rule 60(b), even where a party has not moved for relief under that rule."); *Carter v. Clowers*, 102 N.C. App. 247, 253, 401 S.E.2d 662, 665 (1991) ("[N]omenclature is unimportant, moving papers that are mislabeled in other ways may be treated as motions under Rule 60(b) when relief would be proper under that rule."); *Hoglen v. James*, 38 N.C.

App. 728, 730–31, 248 S.E.2d 901, 903–04 (1978) (holding that even though plaintiff's motion to set aside an order of dismissal did not specify the number of the rule, "[t]he judge had the authority to grant the relief requested and it was his duty to rule on the motion.").

32.   Resolution of "[a] motion under Rule 60(b) is addressed to the sound discretion of the trial court . . . ." *Harris v. Harris,* 307 N.C. 684, 687, 300 S.E.2d 369, 372 (1983).  Moreover, "[i]t is the duty of the judge presiding at a Rule 60(b) hearing to make findings of fact and to determine from such facts whether the movant is entitled to relief from a final judgment or order." *Hoglen*, 38 N.C. App. at 731, 248 S.E.2d at 903; *see also York v. Taylor*, 79 N.C. App. 653, 655, 339 S.E.2d 830, 832 (1986); *Pope*, 786 S.E.2d at 379.  "The burden of proving grounds for relief is on the moving party." *Deutsche Bank Trust Co. Ams. v. Tradewinds Airlines, Inc.*, 2009 NCBC LEXIS 6, at *13 (N.C. Super. Ct. Apr. 29, 2009) (citations omitted).  Accordingly, the Court makes findings of fact and conclusions of law in this Order and Opinion to comply with these requirements for consideration of a motion under Rule 60(b).

B.  Choice of Law Applicable to the Motion to Release

33.   The parties disagree as to the law applicable to the Motion to Release.  The Receiver contends that federal law must be applied because the Judgment was issued by a federal court on a federal question, i.e., the application of the Barton Doctrine. Harris disagrees, and argues that North Carolina law must be applied because the Judgment was transferred to North Carolina state court, recorded with the Guilford

County Clerk of Superior Court, and execution is sought under the laws of North Carolina in North Carolina state court.

34. For the reasons set forth below, the Court concludes that North Carolina law should be applied to determine whether Ms. Epes's Release effected a release of the Judgment against Harris.

35. Under the North Carolina Uniform Enforcement of Foreign Judgment Act ("UEFJA"), a judgment of a United States Court, like the Barton Judgment here, "has the same effect and is subject to the same defenses as a judgment of this State *and shall be enforced or satisfied in like manner.*" N.C. Gen. Stat. § 1C-1703 (emphasis added); *see also* N.C. Gen. Stat. § 1-237. The Receiver has not argued, nor is the Court prepared to conclude, that the UEFJA is preempted or otherwise without application here. In addition, the Receiver does not cite, and the Court's research has not found, any state court decisions applying federal law to the enforcement, execution, or satisfaction of a judgment rendered by a United States Court in state court.[4] Thus, in light of the plain language of the UEFJA and the absence of case law in support of the Receiver's position, the Court concludes that the UEFJA requires

---

[4] The Receiver cites *State Farm Mut. Auto. Ins. Co. v. Lincow*, 30 F. Supp. 3d. 368, 371 (E.D. Pa. 2014) and *Fed. Sav. Loan Ins. Corp. v. Williams*, 622 F.Supp 132, 138 (D. Md. 1985) in support of his position. Neither of these decisions, however, addresses state court enforcement of a federal court judgment or the effect of a recorded satisfaction of judgment in state court, the determinative issues here. The Receiver also cites to *Fed. Sav. Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 134–35, n.4–5 (4th Cir. 1987), but the Fourth Circuit declined to decide controlling law in that case. Moreover, federal courts have concluded that Federal Rule of Civil Procedure 69 requires federal courts to apply state law to determine issues regarding the effect of a state court satisfaction of judgment such as the Release here. *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).

that North Carolina law apply to determine whether the Release bars further efforts to enforce the Barton Judgment against Harris.

C.  Application of North Carolina Law to the Motion to Release

36.  Under the UEFJA, a debtor may seek relief from a judgment entered by an order or decree of a court of the United States on "any . . . grounds for which relief from a judgment of this State would be allowed."  N.C. Gen. Stat. § 1C-1705(a); *see also* N.C. Gen. Stat. § 1C-1702(1).  Section 1C-1705, however, is constrained by application of the Full Faith and Credit Clause of the United States Constitution. *DocRx, Inc. v. EMI Servs. of N.C.*, 367 N.C. 371, 382, 758 S.E.2d 390, 397 (2014).

37.  The Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."  U.S. Const. art. IV, § 1.  Although the Full Faith and Credit Clause does not expressly apply to judgments rendered by a United States Court, North Carolina state courts are required to give full faith and credit to judgments of a United States court which involve "the identical facts" or the "identical res or subject matter . . . ." *Hampton v. N.C. Pulp Co.*, 223 N.C. 535, 539, 27 S.E.2d 538, 541 (1943); *see also First-Citizens Bank & Trust Co. v. Four Oaks Bank & Trust Co.*, 156 N.C. App. 378, 380, 576 S.E.2d 722, 724 (2003).

38.  As limited by the Full Faith and Credit Clause, section 1C-1705(a):

> does not refer to defenses on the merits but rather refers to defenses
> directed at the enforcement of a foreign judgment[5], such as, that the
> judgment creditor committed extrinsic fraud, that the rendering state

---

[5] The UEFJA defines foreign judgment as "any judgment, decree, or order of *a court of the United States* or a court of any other state which is entitled to full faith and credit in this State . . . ."  N.C. Gen. Stat. § 1C-1702(1) (emphasis added).

lacked personal or subject matter jurisdiction, that the judgment has been paid, that the parties have entered into an accord and satisfaction, that the judgment debtor's property is exempt from execution, that the judgment is subject to continued modification, or that the judgment debtor's due process rights have been violated.

*DocRx, Inc.*, 367 N.C. at 382, 758 S.E.2d at 397 (citations omitted) (holding that a debtor could not seek relief from a foreign judgment based on the defense of intrinsic fraud under N.C. Gen. Stat. §1C-1705(a)); *see also Tropic Leisure Corp. v. Hailey*, 796 S.E.2d 129, 132, 135 (N.C. Ct. App. 2017) (concluding that plaintiff's defense to foreign judgment was preserved by UEFJA).

39. Thus, Harris's defenses to enforcement of the Judgment here–that the judgment has been paid and that the parties have entered into an accord and satisfaction–do not challenge the Judgment on the merits or the Bankruptcy Court's orders pre-dating the Release. As a result, the Court concludes that Harris's defenses are preserved by the UEFJA and may be asserted through a motion under Rule 60(b)(5).

40. Turning then to Harris's Motion to Release on the merits, the Court concludes, for the reasons set forth below, that the Judgment has been satisfied as a matter of law and cannot be enforced against Harris in the courts of this State.

41. The North Carolina Supreme Court addressed a nearly identical situation to that here in *Simpson v. Plyler*, 258 N.C. 390, 128 S.E.2d 843 (1963). In *Simpson*, the plaintiff and others signed a "Satisfaction of Judgment" acknowledging plaintiff's receipt of funds, noting that the judgment against the settling defendant had been "paid and satisfied in full," and asserting that plaintiff's cause of action against a

corporate defendant was preserved. *Id.* at 392–93, 128 S.E.2d at 845. The Satisfaction of Judgment, which was filed with the clerk of superior court, authorized the clerk to satisfy the judgment of record. *Id.* at 393, 397, 128 at 845, 848. The Supreme Court concluded that plaintiff's "acceptance of satisfaction" in those circumstances released plaintiff's claims against all tort-feasors for the same injury and that the attempted reservation of plaintiff's claim against the corporate defendant was ineffective. As explained by the Court:

> It is a universal rule that where there has been a judgment against one of two or more joint tort-feasors, followed by acceptance of satisfaction, all other tort-feasors are thereby released, and the judgment and satisfaction may be successfully pleaded by them to the maintenance of the same or another suit by the same plaintiff involving the same cause of action. It is the general rule in this country that the mere entry of a judgment against one joint tort-feasor does not of itself release the plaintiff's claims against other joint tort-feasors liable for the injury. Payment of such a judgment and acceptance of such payment by the plaintiff are, however, generally held to operate as a release of the plaintiff's claims against such other wrongdoers.

*Id.* at 395, 128 S.E.2d at 847 (citations and quotation marks omitted).

42. The Receiver contends that North Carolina overturned the 1963 *Simpson* decision when it enacted the Uniform Contribution Among Tort-Feasors Act (UCATFA) in 1967. Contrary to the Receiver's contention, however, the UCATFA "codifie[d] the common-law rule applicable to joint tort-feasors, under which a claimant may obtain judgments against any and all joint tort-feasors for a single injury or wrongful death, but the claimant may have only one satisfaction." *Akins v. Mission St. Josephs Health Sys.*, 193 N.C. App. 214, 217, 667 S.E.2d 255, 257 (2008)

(citing *Ipock v. Gilmore*, 73 N.C. App. 182, 186, 326 S.E.2d 271, 275 (1985)). In particular, the statute provides that:

> The recovery of judgment against one tort-feasor for the injury or wrongful death does not of itself discharge the other tort-feasors from liability to the claimant. *The satisfaction of the judgment discharges the other tort-feasors from liability to the claimant for the same injury or wrongful death*, but does not impair any right of contribution.

N.C. Gen. Stat. § 1B-3(e) (emphasis added). As such, section 1B-3(e) is consistent with, not a legislative repudiation of, the Supreme Court's holding in *Simpson*.

43. Therefore, under controlling North Carolina law, where, as here, the party obtaining a judgment executes and files evidence of acceptance of satisfaction on the public record, that party is thereafter barred from collecting on the judgment from other joint tort-feasors, notwithstanding recitals in the acceptance of satisfaction to the contrary. *Simpson*, 258 N.C. at 397–98, 128 S.E.2d at 848–49; *see, e.g., Ipock*, 73 N.C. App. at 186, 326 S.E.2d at 275 (holding plaintiff's filing of satisfaction of judgment as to one tort-feasor released all other tort-feasors); *Steelcase, Inc. v. M.B. Haynes Corp.*, No. 1:09cv443, 2011 U.S. Dist. LEXIS 88694, at *16 (W.D.N.C. Aug. 5, 2011) (holding that after filing of satisfaction of judgment, "§1B-3(e) served to discharge [non-settling joint tort-feasor] from any further liability to the [judgment creditor] because a claimant cannot recover twice for the same injury"); *see also Kavanau Real Estate Trust v. Debnam*, 299 N.C. 510, 514, 263 S.E.2d 595, 598 (1980) (holding that defendants "are not entitled to relief under [Rule 60(b)(5)] on the ground that the judgment has been satisfied because the record reveals that plaintiff has

obtained a judgment in bankruptcy court but there is no evidence in the record that it has been satisfied").[6]

44.     Applying these principles here, the Court concludes that Ms. Epes's statement in the Release, which she filed on the public record, declaring that she "hereby release[d] and authorize[d] the Judgment . . . to be marked as paid and satisfied in full" provides conclusive evidence that the Judgment has been satisfied under North Carolina law, notwithstanding her stated intention not to release the

---

[6]   One Pennsylvania court has summarized the rationale for this rule in particularly persuasive terms:

> There are important policy reasons and much wisdom behind the traditional rule that a plaintiff who records a satisfaction of judgment must treat that satisfaction as his or her commitment that the judgment has been fully satisfied.  Judgments are frequently satisfied for less than their face value.  The parties mutually agree that the plaintiff will accept less than he or she was entitled to under the judgment.  The law encourages these as well as other settlements to end disputes between parties.  To permit the plaintiff to later question the satisfaction on the basis of sufficiency of the consideration that she accepted in full satisfaction of the judgment would create uncertainty and unpredictability.  It would erode the integrity of official public records.  We see no reason to accord less respect for official public records than we would for promises between private parties.

> The common law has traditionally attached great significance to the entry of a satisfaction of judgment. A plaintiff who is injured at the hands of more than one tort-feasor may sue and recover a judgment against any one or all of the tort-feasors and may attempt to collect the damages awarded by the judgment against any one or all of them.  However, although a plaintiff may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm.  The rationale underlying this rule is clear -- the remedy provided to an injured person is to receive only one full compensation for the wrong done to him.  Moreover, once the judgment is marked satisfied, the plaintiff is legally barred from further recovery against any of the tort-feasors because the law presumes that full satisfaction for the harm incurred has been received.

*Brandt v. Eagle*, 602 A.2d 1364, 1367 (Pa. Super. Ct. 1992).

Judgment against Harris. Accordingly, the Court concludes that the Judgment became unenforceable against Harris upon filing of the Release on May 13, 2014.

45. Because a third-party assignee acquires "a right to collect on the underlying debt only to the extent of its predecessors in interest[,]" *Credigy Receivables, Inc. v. Whittington*, 202 N.C. App. 646, 654, 689 S.E.2d 889, 894 (2010), the assignment of the Judgment to the Receiver on July 14, 2015 conveyed an unenforceable Judgment. *See, e.g.*, 47 Am. Jur. 2d. Judgments § 811 (2017) ("[I]f the judgment debtor satisfies the judgment before it is assigned by the judgment creditor, the satisfaction would bar the assignee from enforcing the judgment . . . [because] . . . once the judgment creditor has received satisfaction on his or her judgment, he or she has nothing to assign, and the assignee would receive nothing by the transfer.").

46. As a result, the Court concludes that Harris's Motion to Release should be granted under Rule 60(b)(5), the Judgment should be marked as paid and satisfied in full, and Harris's Notice of Exemptions should be denied as moot.[7]

47. The Court further concludes, based on the findings of fact and conclusions of law contained herein, that the Receiver's Motion for Full Faith and Credit should be denied. *See DocRx, Inc.*, 367 N.C. at 382, 758 S.E.2d at 397. Harris's Motion to Release did not attack the Judgment but rather challenged its enforceability based on the filing of the Release on May 13, 2014, some two years after the Judgment was

---

[7] Harris's Motion to Release raises the further argument that Ms. Epes's $1,000,000 payment to the Trustee under the Settlement Agreements satisfied the Barton Judgment. (Harris's Mot. Release J. 2.) Because the Court concludes that the Motion to Release should be granted as set forth above, the Court declines to address Harris's additional argument.

entered and recorded. The Release was filed nearly seven months after the Bankruptcy Court rendered its Order Approving the Barton Judgment Settlement, and the Settlement Agreements did not contemplate the filing of the Release. In sum, there is no evidence before the Court to suggest that the Bankruptcy Court considered the Release, and the impact of the Release on the enforceability of the Judgment, in any ruling bearing on the Motion for Full Faith and Credit. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."); *Med. Mut. Ins. Co. v. Mauldin*, 137 N.C. App. 690, 694, 529 S.E.2d 697, 693–94, 699–700 (2000) ("[I]ssue preclusion, prevents a party from relitigating an issue where it has been previously determined and the parties to the prior action are identical to, or in privity with, the parties in the current action."). Accordingly, the Court concludes that the Receiver's Full Faith and Credit Motion should be denied.

## III.

## CONCLUSION

48. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS** Harris's Motion to Release pursuant to N.C. R. Civ. P. 60(b)(5), **DENIES as Moot** Harris's Notice of Exemptions, **DENIES** the Receiver's Motion for Full Faith and Credit, and **ORDERS** as follows:

   a. The Guilford County Clerk of Superior Court is hereby ordered and directed to (i) mark on the judgment docket for *Charles M. Ivey, III, as*

*Chapter 7 Trustee for EBW Laser, Inc. and EBW, Inc. v. James Mark McDaniel, C. Richard Epes and Douglas Harris* (Guilford County Superior Court, No. 12-CVS-11322) that the Barton Judgment is paid and satisfied in full and (ii) forward a certificate of payment in full to the clerk of superior court in each county to which a transcript of the Judgment has been sent.

b. The Court hereby strikes any outstanding Writ of Execution obtained by the Receiver to recover on the Barton Judgment.

c. The Court hereby orders the Receiver to cease and desist all collection activities to recover on the Barton Judgment.

**SO ORDERED**, this the 4th day of May, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases